Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff Feola

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FEOLA, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> EDWARD R. CAMERON, JEFFREY A. CAMMERRER, MARK G. EISENSCHENK , and APPLIANCE RECYCLING CENTERS OF AMERICA, INC., <br><br>     Defendants. | Case No: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Jason Feoloa ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings,

- 1 -

wire and press releases published by and regarding Appliance Recycling Centers of America, Inc. ("ARCA" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.    This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased or otherwise acquired the common stock of ARCA from March 15, 2012 to February 11, 2015, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

2.    ARCA and its subsidiaries are in the business of selling and recycling major household appliances in North America. ARCA sells new household appliances through a chain of company-owned retail stores under the ApplianceSmart name and also provides turnkey appliance recycling and replacement services for electric utilities and other sponsors of energy efficiency programs.

3.    Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) ARCA's financial statements contained errors concerning sales tax related to its appliance replacement programs; (2) the Company lacked adequate internal controls over its financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4.    On August 6, 2014, the Company issued a press release, announcing, among other things, that the California Board of Equalization ("BOE") is conducting an examination of sales and use taxes covering ARCA's appliance replacement sales

Class Action Complaint for Violation of the Federal Securities Laws

in California during 2011-2013, which the Company believed could be exempt from taxation.

5.     On this news, the Company's shares fell $1.11 per share or over 27% to close at $2.99 per share on August 7, 2014.

6.     On February 11, 2015, the Company issued a press release, announcing, among other things, that it received approval from the BOE to participate in the BOE's Managed Audit Program and some of its previously issued financial statements should no longer be relied upon. In the press release, the Company stated, in part:

> The Company believes that the outcome from the Managed Audit Program will likely result in a Notice of Determination from the California BOE of an assessment of at least $4.0 million ($2.6 million net of income taxes), covering the entire period under audit. The Company has been working with outside consultants to arrive at our assessment estimate and will continue to engage the services of these sales tax experts throughout the Managed Audit Program process. Such assessment, however, would be subject to protest and appeal, and would not need to be funded until the matter has been fully resolved. Resolution could take up to three years. ***The Company anticipates that a pre-tax charge to earnings will be required and that previously issued unaudited consolidated financial statement for the fiscal quarters ended March 29, June 28 and September 27, 2014 and consolidated financial statements for the years ended December 28, 2013, December 29, 2012 and December 31, 2011 and the quarters in the years then ended will need to be restated.  Such previously issued consolidated financial statements should no longer be relied upon[.]***

(Emphasis added).

7.     On this news, the Company's shares fell $0.43 per share or over 14% to close at $2.54 per share on February 12, 2015.

- 3 -

Class Action Complaint for Violation of the Federal Securities Laws

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 8 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as a substantial part of the conduct complained of herein occurred and the Company conducts business in this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired ARCA common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant ARCA sells new household appliances through a chain of company-owned retail stores under the ApplianceSmart name and also provides turnkey appliance recycling and replacement services for electric utilities and other sponsors of energy efficiency programs. ARCA is headquartered in Minneapolis, Minnesota and trades on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "ARCI."

15.     Defendant Edward R. Cameron ("Cameron") has served as the Company's Chairman, President and Chief Executive Officer at all relevant times

1  until his retirement from the positions of President and Chief Executive Officer of the

2  Company on August 13, 2014.

3      16.    Defendant Mark G. Eisenschenk ("Eisenschenk") has served as the

4  Company's President and Chief Executive Officer since August 13, 2014.

5      17.    Defendant Jeffrey A. Cammerrer ("Cammerrer") served as the

6  Company's Chief Financial Officer from October 2012 until his resignation on

7  November 21, 2014.

8      18.    The defendants referenced above in ¶¶ 15 – 17 are sometimes referred to

9  herein as the "Individual Defendants."

10     19.    Defendant ARCA and the Individual Defendants are referred to herein,

11 collectively, as the "Defendants."

12                       **SUBSTANTIVE ALLEGATIONS**

13                             **Background**

14     20.    Utility companies often provide assistance and incentives for consumers

15 to discontinue use of a surplus appliance or to replace their old, inefficient appliances

16 with newer, more efficient models.  Some utilities achieve this by offering appliance

17 replacement programs for some segments of their customers, through which older

18 model kitchen and laundry appliances are recycled and new highly efficient

19 ENERGY STAR® units are installed.

20     21.    ApplianceSmart operates eighteen company-owned stores, sells new

21 appliances directly to consumers and provides affordable ENERGY STAR® options

22 for energy efficiency appliance replacement programs.

23     22.    ARCA Recycling, Inc. ("ARCA California"), a California corporation, is

24 a wholly owned subsidiary of ARCA formed in November 1991 to provide turnkey

25 recycling and appliance replacement services for energy efficiency programs.

26 **Materially False And Misleading Statements Issued During the Class Period**

27     23.    The Class Period starts on March 15, 2012, when the Company filed a

28 Form 10-K for the fiscal year ended December 31, 2011 (the "2011 10-K") with the

Class Action Complaint for Violation of the Federal Securities Laws

SEC, which provided the Company's year end financial results and position and stated that the Company's internal control over financial reporting was effective as of December 31, 2011. The 2011 10-K was signed by Defendant Cameron. The 2011 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Cameron, which stated that the financial information contained in the 2011 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On March 22, 2013, the Company filed a Form 10-K for the fiscal year ended December 29, 2012 (the "2012 10-K") with the SEC, which provided the Company's year end financial results and position and stated that the Company's internal control over financial reporting was effective as of December 29, 2012. The 2012 10-K was signed by Defendants Cameron and Cammerrer. The 2012 10-K contained signed SOX certifications by Defendants Cameron and Cammerrer, which stated that the financial information contained in the 2012 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     On March 14, 2014, the Company filed a Form 10-K for the fiscal year ended December 28, 2013 (the "2013 10-K") with the SEC, which provided the Company's year end financial results and position and stated that the Company's internal control over financial reporting was effective as of December 28, 2013. The 2013 10-K was signed by Defendants Cameron and Cammerrer. The 2013 10-K contained signed SOX certifications by Defendants Cameron and Cammerrer, which stated that the financial information contained in the 2012 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On May 9, 2014, the Company filed a Form 10-Q for the quarterly period ended March 29, 2014 (the "1Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position and stated that there was no

Class Action Complaint for Violation of the Federal Securities Laws

change in the Company's internal control over financial reporting during the quarter. The 1Q2014 10-Q was signed by Defendants Cameron and Cammerrer. The 1Q2014 10-Q contained signed SOX certifications by Defendants Cameron and Cammerrer, which stated that the financial information contained in the 1Q2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On August 11, 2014, the Company filed a Form 10-Q for the quarterly period ended June 28, 2014 (the "2Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position and stated that there was no change in the Company's internal control over financial reporting during the quarter. The 2Q2014 10-Q was signed by Defendants Cameron and Cammerrer. The 2Q2014 10-Q contained signed SOX certifications by Defendants Cameron and Cammerrer, which stated that the financial information contained in the 2Q2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On November 7, 2014, the Company filed a Form 10-Q for the quarterly period ended June 28, 2014 (the "3Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position and stated that there was no change in the Company's internal control over financial reporting during the quarter. The 3Q2014 10-Q was signed by Defendants Eisenschenk and Cammerrer. The 3Q2014 10-Q contained signed SOX certifications by Defendants Eisenschenk and Cammerrer, which stated that the financial information contained in the 3Q2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     The statements referenced in ¶¶ 23 – 28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically,

Class Action Complaint for Violation of the Federal Securities Laws

Defendants made false and/or misleading statements and/or failed to disclose that: (1) ARCA's financial statements contained errors concerning sales tax related to its appliance replacement programs; (2) the Company lacked adequate internal controls over its financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### **The Truth Slowly Emerges**

30.     On August 6, 2014, the Company issued a press release announcing its financial results for the second quarter ended June 28, 2014. In the same press release, the Company revealed the BOE is currently conducting a sales and use tax examination of its California operations from 2011 to 2013, stating in relevant part:

> From time to time, the company is subject to sales and use tax audits that could result in additional taxes, penalties and interest owed to various taxing authorities. ***The California Board of Equalization is currently conducting a sales and use tax examination covering the company's California operations for 2011, 2012 and 2013. A large portion of the California operations in those years consisted of appliance replacement sales under programs conducted by utility companies on which the company did not assess, collect or remit sales tax.*** For several reasons, including the fact that these appliance replacement programs benefit low-income utility customers with ratepayer funds, ***the company believes such transactions could be exempt from taxation.*** It is possible that the California Board of Equalization will disagree with the company's position and assess taxes, penalties and interest in an amount that is material to its financial position and results of operations. The company intends to vigorously advance and defend its position in cooperation with local utilities and governmental regulatory entities should taxes, penalties and interest be assessed by the California Board of Equalization. At this time, the company cannot estimate a range of potential impact on its consolidated financial statements.

(Emphasis added).

31.     On this news, the Company's shares fell $1.11 per share or over 27% to close at $2.99 per share on August 7, 2014, damaging investors.

Class Action Complaint for Violation of the Federal Securities Laws

32.     On February 11, 2015, the Company issued a press release announcing, among other things, that: (i) it anticipates a $4.0 million assessment from the BOE, which will require a pre-tax charge to earnings; and (ii) its previously issued unaudited consolidated financial statement for the fiscal quarters ended March 29, June 28 and September 27, 2014 and consolidated financial statements for the years ended December 28, 2013, December 29, 2012 and December 31, 2011 and the quarters in the years then ended should no longer be relied upon and will need to be restated. The press release states, in part:

> MINNEAPOLIS, Feb. 11, 2015 /PRNewswire/ -- **Appliance Recycling Centers of America, Inc. ("ARCA" or the "Company") reported that it has applied for and, as of February 9, 2015, received approval from the California Board of Equalization ("BOE") to participate in the BOE's Managed Audit Program, which allows ARCA to conduct a self-examination related to state sales and use taxes.** As the Company communicated previously, the BOE had notified the Company of its intent to conduct an examination of sales and use taxes covering ARCA's appliance replacement sales in California during 2011-2013. **During the fourth quarter of 2014, the Company received communication from the BOE indicating that they were not in agreement with the Company's interpretation of the sales tax law in the State of California.** The Company then contacted its utility company clients requesting evidence of tax exemption. The utility companies did not respond to the Company's requests. On February 6, 2015, the Company's Board Chairman and its Chief Executive Officer met with representatives of the utility company for which the majority of the sales taxes relate.  The utility company representatives stated that to their knowledge they had no evidence of tax exemption to provide the Company. They said that they would, however, research whether funding for any of the appliance replacements came from federal sources, which could potentially help support partial tax exemption. ARCA's participation in the BOE's Managed Audit Program could result in the elimination of potential tax penalties while significantly reducing interest costs associated with any tax assessment. The Managed Audit will cover the period from January 1, 2011 through September 30, 2014, and is expected to be completed by March 31, 2015.

Class Action Complaint for Violation of the Federal Securities Laws

\* \* \* \* \*

*The Company believes that the outcome from the Managed Audit Program will likely result in a Notice of Determination from the California BOE of an assessment of at least $4.0 million ($2.6 million net of income taxes), covering the entire period under audit.* The Company has been working with outside consultants to arrive at our assessment estimate and will continue to engage the services of these sales tax experts throughout the Managed Audit Program process. Such assessment, however, would be subject to protest and appeal, and would not need to be funded until the matter has been fully resolved. Resolution could take up to three years. *The Company anticipates that a pre-tax charge to earnings will be required and that previously issued unaudited consolidated financial statement for the fiscal quarters ended March 29, June 28 and September 27, 2014 and consolidated financial statements for the years ended December 28, 2013, December 29, 2012 and December 31, 2011 and the quarters in the years then ended will need to be restated.  Such previously issued consolidated financial statements should no longer be relied upon[.]*

(Emphasis added).

33.    On February 12, 2015, the Company filed a Form 8-K with the SEC, which further detailed the non-reliance of its previously issued financial statements. The Form 8-K states, in part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

As previously disclosed, the California Board of Equalization ("BOE") is conducting a sales and use tax examination covering the California operations of Appliance Recycling Centers of America, Inc. (the "Company") for 2011, 2012 and 2013. The Company believed it was exempt from collecting sales taxes under service agreements with utility customers which included appliance replacement programs. During the fourth quarter of 2014 the Company received communication from the BOE indicating that they are not in agreement with the Company's interpretation of the law. As a result, the Company has applied for and,

Class Action Complaint for Violation of the Federal Securities Laws

as of February 9, 2015, received approval to participate in the California Board of Equalization's Managed Audit Program. The period covered under this program includes 2011, 2012, 2013 and extends through the nine-month period ended September 30, 2014. *At this time, it is our belief that the Company will be assessed at least $4.0 million ($2.6 million net of income taxes) in sales tax and interest related to the appliance replacement programs that we administered on behalf of our customers on which we did not assess, collect or remit sales tax.* The Company has been working with outside consultants to arrive at our assessment estimate and will continue to engage the services of these sales tax experts throughout the Managed Audit Program process. The sales tax amounts that we will likely be assessed relate to transactions in the period under examination by the BOE. Such assessment, however, would be subject to protest and appeal, and would not need to be funded until the matter has been fully resolved. Resolution could take up to three years. The Company's failure to collect and remit taxes related to the prior periods is estimated to be material to the results previously reported by the Company for all periods under examination by the BOE. The Company is working with the Audit Committee of the Company's Board of Directors (the "Audit Committee") and the Company's advisors to determine the final adjustments required to be made to the prior financial information as expeditiously as possible.

*On February 9, 2015, the Audit Committee, after discussion with management and the Company's independent registered public accounting firm, Baker Tilly Virchow Krause LLP ("BTVK"), concluded that the Company's previously issued audited consolidated financial statements for the years ended December 28, 2013, December 29, 2012 and December 31, 2011 and the previously issued unaudited consolidated financial statements for the fiscal quarters ended March 29, June 28, and September 27, 2014, and also including 2013, 2012 and 2011 quarterly results and the disclosures and related communications for each of those periods, require the correction of amounts previously reported and should no longer be relied upon. Also, management's report on internal controls over financial reporting for the year ended December 28, 2013 should no longer be relied upon.*

Class Action Complaint for Violation of the Federal Securities Laws

The Company anticipates that it will file its Annual Report on Form 10-K for the fiscal year ended January 3, 2015 (the "2014 10-K") on a timely basis. ***The Company will restate the financial results contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 28, 2013 and the previously unaudited financial statements and other financial information contained in the Company's Quarterly Reports on Form 10-Q for the fiscal quarters ended March 29, June 28, and September 27, 2014, along with the disclosures and related communications for these periods.*** The Audit Committee and the Company presently do not expect to identify any material adjustments in the restated financial statements other than the sales tax matter discussed above.

The Company and the Audit Committee are reevaluating the Company's internal control over financial reporting and its disclosure controls and procedures. Management, in consultation with the Audit Committee, also has determined that material weaknesses existed in the Company's internal control over financial reporting and that disclosure controls and procedures were not effective at December 28, 2013 and through January 3, 2015. The Company intends to enhance its procedures and controls surrounding the accounting for sales and use taxes.

(Emphasis added).

34.    On this news, the Company's shares fell $0.43 per share or over 14% to close at $2.54 per share on February 12, 2015.

35.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired ARCA common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

- 12 -

1   representatives, heirs, successors or assigns and any entity in which Defendants have
2   or had a controlling interest.

3        37.    The members of the Class are so numerous that joinder of all members is
4   impracticable. Throughout the Class Period, ARCA common stock was actively
5   traded on the NASDAQ. While the exact number of Class members is unknown to
6   Plaintiff at this time and can be ascertained only through appropriate discovery,
7   Plaintiff believes that there are hundreds or thousands of members in the proposed
8   Class. Record owners and other members of the Class may be identified from records
9   maintained by ARCA or its transfer agent and may be notified of the pendency of this
10  action by mail, using the form of notice similar to that customarily used in securities
11  class actions.

12       38.    Plaintiff's claims are typical of the claims of the members of the Class as
13  all members of the Class are similarly affected by Defendants' wrongful conduct in
14  violation of federal law that is complained of herein.

15       39.    Plaintiff will fairly and adequately protect the interests of the members
16  of the Class and has retained counsel competent and experienced in class and
17  securities litigation. Plaintiff has no interests antagonistic to or in conflict with those
18  of the Class.

19       40.    Common questions of law and fact exist as to all members of the Class
20  and predominate over any questions solely affecting individual members of the Class.
21  Among the questions of law and fact common to the Class are:

22       •    whether the federal securities laws were violated by Defendants' acts as
23            alleged herein;

24       •    whether statements made by Defendants to the investing public during
25            the Class Period misrepresented material facts about the business,
26            operations and management of ARCA;

27       •    whether the Individual Defendants caused ARCA to issue false and
28            misleading financial statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of ARCA common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- ARCA common stock are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

- Plaintiff and members of the Class purchased, acquired and/or sold ARCA common stock between the time the Defendants failed to disclose

Class Action Complaint for Violation of the Federal Securities Laws

or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of common stock. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of ARCA securities; and (iii) cause Plaintiff and other

members of the Class to purchase or otherwise acquire ARCA common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for ARCA common stock. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ARCA's finances and business prospects.

49.     By virtue of their positions at ARCA, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of ARCA common stock from their personal portfolios.

51.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the

Class Action Complaint for Violation of the Federal Securities Laws

1    senior managers and/or directors of ARCA, the Individual Defendants had knowledge
2    of the details of ARCA's internal affairs.

3        52.    The Individual Defendants are liable both directly and indirectly for the
4    wrongs complained of herein. Because of their positions of control and authority, the
5    Individual Defendants were able to and did, directly or indirectly, control the content
6    of the statements of ARCA. As officers and/or directors of a publicly-held company,
7    the Individual Defendants had a duty to disseminate timely, accurate, and truthful
8    information with respect to ARCA's businesses, operations, future financial condition
9    and future prospects. As a result of the dissemination of the aforementioned false and
10   misleading reports, releases and public statements, the market price of ARCA
11   common stock was artificially inflated throughout the Class Period. In ignorance of
12   the adverse facts concerning ARCA's business and financial condition which were
13   concealed by Defendants, Plaintiff and the other members of the Class purchased or
14   otherwise acquired ARCA common stock at artificially inflated prices and relied
15   upon the price of the common stock, the integrity of the market for the common stock
16   and/or upon statements disseminated by Defendants, and were damaged thereby.

17       53.    During the Class Period, ARCA common stock were traded on an active
18   and efficient market. Plaintiff and the other members of the Class, relying on the
19   materially false and misleading statements described herein, which the Defendants
20   made, issued or caused to be disseminated, or relying upon the integrity of the
21   market, purchased or otherwise acquired shares of ARCA common stock at prices
22   artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other
23   members of the Class known the truth, they would not have purchased or otherwise
24   acquired said common stock, or would not have purchased or otherwise acquired
25   them at the inflated prices that were paid. At the time of the purchases and/or
26   acquisitions by Plaintiff and the Class, the true value of ARCA common stock was
27   substantially lower than the prices paid by Plaintiff and the other members of the

28

- 17 -

Class Action Complaint for Violation of the Federal Securities Laws

Class. The market rice of ARCA common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### <u>Against The Individual Defendants</u>

56.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    During the Class Period, the Individual Defendants participated in the operation and management of ARCA, and conducted and participated, directly and indirectly, in the conduct of ARCA's business affairs. Because of their senior positions, they knew the adverse non-public information about ARCA's current financial position and future business prospects.

58.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to ARCA's business practices, and to correct promptly any public statements issued by ARCA which had become materially false or misleading.

59.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ARCA disseminated in the marketplace during the Class Period concerning the Company's business, operational

Class Action Complaint for Violation of the Federal Securities Laws

and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause ARCA to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of ARCA within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ARCA common stock.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of ARCA. By reason of their senior management positions and/or being directors of ARCA, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, ARCA to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of ARCA and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ARCA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

Class Action Complaint for Violation of the Federal Securities Laws

1    D.    Awarding such other and further relief as this Court may deem just and

2  proper.

3              **DEMAND FOR TRIAL BY JURY**

4        Plaintiff hereby demands a trial by jury.

5

6  Dated: March 6, 2015                    Respectfully submitted,

7                                          **THE ROSEN LAW FIRM, P.A.**

8                                          /s/ Laurence Rosen

9                                          Laurence M. Rosen, Esq. (SBN 219683)

10                                         355 S. Grand Avenue, Suite 2450

11                                         Los Angeles, CA 90071
                                           Telephone: (213) 785-2610
12                                         Facsimile: (213) 226-4684
                                           Email: lrosen@rosenlegal.com
13

14                                         Counsel for Plaintiff Feola

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint for Violation of the Federal Securities Laws

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Appliance Recycling Centers of America, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Appliance Recycling Centers of America, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:**    Jason
**Middle initial:**
**Last name:**    Feola
**Address:** 
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 06/04/14 | 240 | 4.10 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

**Certification for Jason Feola (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 03/04/2015