MICHAEL C. TU (State Bar No. 186793)
*mtu@orrick.com*
KEVIN M. ASKEW (State Bar No. 238866)
*kaskew@orrick.com*
MICHELLE VAN OPPEN (State Bar No. 293509)
*mvanoppen@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:  (213) 629-2020
Facsimile:    (213) 612-2499

Attorneys for Defendants
Appliance Recycling Centers of America, Inc.,
Edward R. Cameron and Jeffrey A. Cammerrer

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JASON FEOLA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> EDWARD R. CAMERON, et al., <br><br> Defendants. | Case No. 15-cv-1654 JAK (AJWx) <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** <br><br> Hon. John A. Kronstadt <br><br> Date:          October 19, 2015 <br> Time:          8:30 a.m. <br> Courtroom:  750 |

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A
STRONG INFERENCE THAT ANY DEFENDANT ACTED WITH
SCIENTER ................................................................................... 2

    A.    Plaintiffs' Argument Regarding "Obviousness." ............................ 3

    B.    Allegations Regarding Messrs. Cameron and Cammerrer. ................ 5

    C.    Plaintiffs' Remaining Allegations Are Severely Lacking. ................ 7

III.    PLAINTIFFS FAIL TO PLEAD FALSITY WITH THE
PARTICULARITY REQUIRED BY THE PSLRA ..................................... 9

IV.    THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED ........... 10

V.    CONCLUSION ........................................................................... 10

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                **Page(s)**

3
*Abrams v. MiMedx Group, Inc.*,
   37 F. Supp. 3d 1271 (N.D. Ga. 2014) ........................................................ 4

4
*Bell Atlantic Corp. v. Twombly*,
5
   550 U.S. 544 (2007) .................................................................................... 2

6
*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) ...................................................................... 2
7

*Freudenberg v. E*Trade Fin. Corp.*,
8
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ........................................................ 7

9
*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................. 9, 10
10

11
*Henning v. Orient Paper, Inc.*,
   2011 WL 2909322 (C.D. Cal. July 20, 2011) ............................................. 3

12
*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012) ...................................................... 7
13

14
*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................... 5

15
*In re Medicis Pharm. Corp. Sec. Litig.*,
   2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ................................................ 3
16

17
*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .................................................................... 2

18
*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) ................................................................................ 3
19

20
*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) .................................................................... 6

21
*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................ 7
22

23
*Rehm v. Eagle Fin. Corp.*,
   954 F. Supp. 1246 (N.D. Ill. 1997) ............................................................. 5

24
*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ...................................................................... 3
25

26
*Roundy v. Commissioner*,
   122 F.3d 835 (9th Cir. 1997) ...................................................................... 2

27
*Schneider v. Cal. Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) .................................................................... 7
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Silva v. U.S. Bancorp,*
   2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ......................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ...........................................................................................1

*In re U.S. Aggregates, Inc. Sec. Litig.,*
   235 F. Supp. 2d 1063 (N.D. Cal. 2002)..............................................................6

*In re UTStarcom, Inc. Sec. Litig.,*
   617 F. Supp. 2d 964 (N.D. Cal. 2009)................................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.,*
   704 F.3d 694 (9th Cir. 2012) .............................................................................2

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) ....................................................................2, 5, 10

**Statutes, Rules and Standards**

15 U.S.C. §78u-4(b)(1)(B) .....................................................................................10

15 U.S.C. §78u-4(b)(2)(A) .......................................................................................2

Fed. R. Civ. P. 12(b)(6) ...........................................................................................7

Generally Accepted Auditing Standards, AICPA, AU-C §315.06 ..........................9

Public Company Accounting Oversight Board, Auditing Standards,
   PCAOB Release No. 2010-004 (Aug. 5, 2010) ..................................................9

## I.   INTRODUCTION

The Amended Complaint ("AC") should be dismissed because it offers an implausible theory of fraud lacking any alleged motive or purpose.  Plaintiffs put forward nothing more than a series of "must have" assertions that ask the Court to suspend its good sense and instead to accept the following irrational inferences:

- That Mr. Cameron "must have" known that the Company's stock price was artificially inflated, and as a result purchased shares at inflated values and held on to them, knowing those shares would eventually decrease in value once the purported fraud became known.

- That Mr. Cameron and Mr. Cammerrer "must have" known that California's tax laws did not exempt ARCA's appliance replacement sales, notwithstanding:

  1. ARCA's independent auditors never raised the issue and gave clean unqualified opinions for each of the years at issue, and

  2. the lack of any particularized allegation in the AC explaining how they would have come to possess any such knowledge.

- That Mr. Cameron "must have" retired as CEO as a result of his role in the purported fraud, notwithstanding that he stayed on as Chairman of the Board of Directors and came back as CEO only months later.

- That Mr. Cammerrer "must have" left for the same reason, notwithstanding that he did not leave the Company until months after Mr. Cameron's retirement and that he left for another CFO position.

- That defendants "must have" deliberately chosen not to collect sales taxes from ARCA's utility company customers, even though those taxes could have easily been passed through to those customers without any effect on ARCA's bottom line.

The Court is asked to accept these contradictory inferences as "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  Of course, none of these assertions come anywhere close to establishing the required strong inference that defendants acted with scienter, that is required for securities fraud.  Viewed "holistically" (as plaintiffs urge), plaintiffs' allegations suggest that defendants' disagreement with the California tax regulators resulted from, at worst, an honest mistake.  Because plaintiffs have not alleged any actionable allegation of scienter, the AC should be dismissed.

## II.   PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A STRONG INFERENCE THAT ANY DEFENDANT ACTED WITH SCIENTER.

Essentially conceding that none of their allegations, standing alone, support the required "strong inference" that defendants acted with at least deliberate recklessness,[1] plaintiffs warn of "los[ing] the forest for the trees" by focusing on individual allegations before considering plaintiffs' complaint holistically.  Opp. at 6.  But first you must have trees.  Defendants followed precisely the "dual inquiry" mandated by the Ninth Circuit, under which allegations are first analyzed individually, and then, if none are sufficient standing alone, reviewed "holistically." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009). Contrary to plaintiffs' suggestion, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012), did not overrule *Zucco* or announce a different standard.[2]

In any event, defendants *did* conduct a holistic analysis (Opening Br. at 20-21), which plaintiffs discount only because they do not like its conclusion. Plaintiffs urge the Court to view their allegations "in their totality" (Opp. at 12) but fail to explain why the "totality" of their allegations—each of which is deficient—is greater than the sum of their parts.  The weaknesses inherent in plaintiffs'

---

[1] Plaintiffs misleadingly cite *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), for the proposition that all they need to do is "nudge[] their claims across the line from conceivable to plausible."  Opp. at 10.  But plaintiffs must do more than allege a mere "plausible" theory of scienter.  They must additionally allege "facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2)(A) (emphasis added).

[2] The *VeriFone* panel in fact acknowledged that "a dual analysis remains permissible so long as it does not unduly focus on the weakness of individual allegations to the exclusion of the whole picture."  *Id.* at 703; *accord In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014) (post-*VeriFone*, conducting the "dual inquiry" set forth in *Zucco*).  Indeed, the court recognized that "as a practical matter, some grouping and discussion of individualized allegations may be appropriate during a holistic analysis."  *VeriFone*, 704 F.3d at 702.  And in any event, a three-judge appellate panel cannot by itself overrule a prior Ninth Circuit opinion.  *Roundy v. Commissioner*, 122 F.3d 835, 837 (9th Cir. 1997). Plaintiffs' reliance on *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) is also misplaced.  That Sixth Circuit opinion is at odds with the Ninth Circuit's express endorsement of the "dual inquiry" in *Zucco* and *NVIDIA*.

1  allegations are not overcome simply by grouping all of plaintiffs' contentions
2  (some of them pled in the AC, others not) together in a list (*see* Opp. at 12-14).

3  ## A.   Plaintiffs' Argument Regarding "Obviousness."

4       Stripped to its essence, the theory of fraud put forward by plaintiffs is that
5  California's tax laws are so "simple and obvious" that defendants must have known
6  that ARCA's California appliance replacement sales were not tax-exempt.  Opp. at
7  12.  Plaintiffs assert that *any* violation of a purportedly "obvious" statute or
8  regulation is enough to support the required "strong inference" of scienter.

9       But the relevant question is not what *plaintiffs* now understand the California
10  tax laws to require, but rather what *defendants* contemporaneously understood
11  about those requirements.[3]  The *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL
12  3154863 (D. Ariz. Aug. 9, 2010) decision cited by plaintiffs for the proposition that
13  "violation of [a] simple and obvious rule gives rise to a strong inference of scienter"
14  (Opp. at 12), makes exactly this point:  a "plaintiff cannot merely point at a GAAP
15  principle and contend that a correct interpretation was simple or obvious.  At the
16  very least, plaintiffs must present facts demonstrating that the ***defendant was aware***
17  ***of the relevant GAAP principle and that this defendant knew how that principle***
18  ***was being interpreted*****."  *Id.* at \*5 (emphasis added).  Under the reasoning of
19  plaintiffs' own cited cases,[4] the allegations are lacking.[5]

20  _____

21  [3] Plaintiffs inexplicably cite to a purported "analogous hypothetical" in *Omnicare,*
*Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1328
22  (2015).  That case has no bearing on the issues raised in this motion.  It involved a
claim brought under Section 11 of the Securities Act of 1933, which unlike the
23  claims at issue here, does not involve any scienter requirement.  And in any event,
the defendant in *Omnicare* expressly stated to investors that it believed its actions
24  to be in compliance with applicable laws.  ARCA is not alleged to (and did not)
make any such representation with respect to its sales tax obligations.

25  [4] In *Henning v. Orient Paper, Inc.*, 2011 WL 2909322 (C.D. Cal. July 20, 2011), an
unpublished decision cited by plaintiffs (Opp. at 12), the "obvious" fact was $90
26  million worth of payments made by defendant to a related party controlled by the
CEO—no such related party or insider dealings are alleged here, nor is the
27  magnitude of the sales tax issue even close.  *Id.* at \*6.

28  [5] *See, e.g., Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (complaint "must
contain allegations of specific ***contemporaneous*** statements or conditions that

The argument that a tax regulation is, in hindsight, "obvious" is nothing more than a legal conclusion. The AC offers no support for the assertion that a requirement contained in a voluminous statute should have been known to defendants—the inferences go the other way given that ARCA's auditors signed off on the accounting for those sales as set forth in the financial statements.[6]

Plaintiffs' other allegations about purported obviousness do not add anything to either an individual or holistic analysis. Plaintiffs contend that ARCA should have "confirm[ed] with BOE that its strained interpretation was correct" and should have reviewed the FAQ section on BOE's website. Opp. at 12-13. But neither of these contentions appear anywhere in the AC, and in any event they suggest at worst negligence, not fraud.[7] Plaintiffs also contend that ARCA's financial statements contained "vast overstatements of income and earnings," providing circumstantial evidence of scienter. Opp. at 5, 14. But by focusing on ARCA's earnings rather than revenue, plaintiffs vastly overstate the effect of the sales tax issue by focusing on misleading earnings percentages. Between 2011 and 2014, ARCA's revenues totaled $500 million.[8] ARCA's potential liability relating to sales and use taxes of approximately $4 million **constitutes less than one percent of ARCA's revenues during that time period.** If anything, that negates any

---

demonstrate the intentional or the deliberately reckless false or misleading nature of the statements **when made**") (emphasis added).

[6] Moreover, plaintiffs' assertion that the tax laws are "simple and obvious" is further belied by the fact that as of today's date, the BOE *still* has not made any final determination as to whether ARCA owes tax on the sales at issue.

[7] *Abrams v. MiMedx Group, Inc.*, 37 F. Supp. 3d 1271 (N.D. Ga. 2014), cited by plaintiffs for the claim that ARCA's "failure to confirm its claimed exemption with the regulator demonstrates scienter" (Opp. at 12), is inapposite. There, the defendant affirmatively represented its product as complying with applicable regulations, demonstrating its awareness of the regulatory issue. *Id.* at 1275. ARCA made no such representation regarding its collection of sales taxes.

[8] *See* Supp. Request for Judicial Notice, Ex. A (2011 10-K, reporting $127 million in revenue); Ex. B (2012 10-K, reporting $114 million in revenue); Ex. C (2014 Amended 10-K, reporting $128 million in revenue for 2013 (as restated) and $131 million in revenue for 2014).

1  inference that defendants "must have" contemporaneously known about the issue.[9]

2  ### B.    Allegations Regarding Messrs. Cameron and Cammerrer.

3  As to Mr. Cameron, the AC contains no allegations demonstrating that he

4  had any contemporaneous understanding of the California sales tax provisions, or

5  otherwise had anything to do with the decision not to collect the tax.  Plaintiffs'

6  claims against Mr. Cameron should be dismissed for that reason alone.[10]

7  Nor do plaintiffs' allegations concerning Mr. Cameron's temporary

8  retirement add any "pieces to the scienter puzzle" as plaintiffs contend.  Opp. at 15-

9  16.  Plaintiffs ignore the fact that Mr. Cameron remained as Chairman following his

10 retirement as CEO.  If, as plaintiffs suggest, Mr. Cameron's retirement was related

11 to the discovery of his role in a fraud, why would the Company have kept him on as

12 Chairman (and invite him back to serve as CEO less than a year later)?  Plaintiffs

13 do not say.

14 Plaintiffs fare no better with respect to their allegations concerning Mr.

15 Cammerrer.  The AC makes only the conclusory allegations that Mr. Cammerrer

16 "was intimately knowledgeable of sales tax requirements" and that he "managed all

17 of the Company's day-to-day accounting operations, including . . . taxes."  AC ¶78.

18 But much more is required than a bare allegation that a defendant "must have

19 known" about a misstatement due to the nature of his position.  *Zucco*, 552 F.3d at

20 1000 (allegations regarding management's role must be "buttressed with detailed

21 and specific allegations about management's exposure to factual information within

22
23
24
25  [9] The authorities cited by plaintiffs (Opp. at 14) are inapposite.  *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) (plaintiffs alleged that revenue inflation exceeded 25% in some quarters, and the company announced that executives had been terminated for cause in connection with accounting problems); *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256 (N.D. Ill. 1997) (magnitude of alleged misstatement supports inference of scienter only "*where defendants were in a position to detect the errors*") (emphasis added).

26
27
28  [10] Plaintiffs allege that Mr. Cameron met with one of ARCA's utility customers in an attempt to obtain evidence of a tax exemption.  *See* AC ¶54.  But as the AC itself makes clear, that meeting took place in ***February 2015***, well after the BOE initiated its audit.  *Id.*  That does not suggest, as plaintiffs now argue, that Mr. Cameron played a "role in ARCA's decision not to collect sales tax."  Opp. at 15.

1   the company"); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th

2   Cir. 2014) ("plaintiff must produce either specific admissions by one or more

3   corporate executives of detailed involvement in the minutia of a company's

4   operations . . . or witness accounts demonstrating that executives had actual

5   involvement in creating false reports.").  Plaintiffs offer no allegations from which

6   one could draw the inference that Mr. Cammerrer was personally responsible for

7   understanding the nuances of the laws in each state the Company did business.[11]

8       Plaintiffs offer nothing else against Mr. Cammerrer but the allegation that he

9   left to take a comparable CFO position at a privately-held firm, which, in plaintiffs'

10   eyes, is "a downgrade."  Opp. at 9.[12]  This is not enough to give rise to a strong

11   inference that his role in a purported fraud precipitated his departure—particularly

12   given that plaintiffs do not explain why Mr. Cameron would be forced to retire

13   immediately, yet Mr. Cammerrer remained for several months longer.  The far more

14   compelling inference is that Mr. Cammerrer left for his stated reason, namely, to

15   pursue a new opportunity.  Employees leave jobs all the time, for all kinds of

16   reasons—for better pay, for better growth opportunities, to be closer to family, etc.

17       Even if these changes had anything to do with the BOE audit (and the AC

18   does not allege with any particularity that they did), the compelling inference is that

19   they resulted from perceived negligence rather than a belief that Mr. Cameron and

20   Mr. Cammerrer engaged in fraud.[13]

21

22   [11] Plaintiffs assert in their opposition that Mr. Cammerrer "participated" in ARCA's "conscious decision not to collect and remit sales tax."  Opp. at 14.  Even if the
23   Court could consider this unpled contention (and it should not), that conclusory assertion still does not rise to the level of specificity required by the Ninth Circuit.

24   [12] Plaintiffs say that Mr. Cammerrer's new employer is "smaller" than ARCA (Opp. at 9), but that allegation appears nowhere in the AC.  In addition, plaintiffs do not
25   explain why private companies are considered less prestigious than publicly-held companies.  Would plaintiffs have made the same argument had Mr. Cammerrer
26   taken a position as CFO of Uber, Cargill or Dell (all private companies)?

27   [13] *See, e.g.*, *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) ("Plaintiff can point to no particularized allegation refuting the
28   reasonable assumption that [defendant's employee] was fired simply because the errors that [led] to the restatement occurred on his watch or because he failed

1         It should also be noted that plaintiffs do not dispute the judicially noticeable

2    fact that Mr. Cameron actually *purchased* ARCA stock during the period in which

3    he was allegedly making misrepresentations.  Ignoring Ninth Circuit authority

4    which squarely holds that evidence of stock purchases by insiders negates an

5    inference of scienter (Opening Br. at 15-16), plaintiffs contend that "an insider's

6    stock purchase is not necessarily inconsistent with scienter."  Opp. at 16.  But the

7    authorities cited by plaintiffs are inapposite.  *See Kyung Cho v. UCBH Holdings,*

8    *Inc.*, 890 F. Supp. 2d 1190, 1202 n.2 (N.D. Cal. 2012) (stock purchases did not

9    conclusively negate scienter where plaintiffs, unlike plaintiffs here, specifically

10   alleged that defendant made efforts to shield information regarding the company's

11   financial state).[14]  Plaintiffs do not (and cannot) contend that there is any way in

12   which Mr. Cameron's stock purchases *support* a strong inference of scienter, and

13   that is the sole theory of motive that is pled.  AC ¶93.

14        **C.**    **Plaintiffs' Remaining Allegations Are Severely Lacking.**

15        Plaintiffs advance an entirely new theory in the opposition that ARCA

16   deliberately chose not to charge sales tax so that it could charge lower prices to its

17   customers and thereby gain a competitive edge.  *See* Opp. at 17.  As an initial

18   matter, because this new theory is not pled in the AC, it should be disregarded.  *See*

19   *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)

20   ("'new' allegations contained in [an] opposition motion … are irrelevant for Rule

21   12(b)(6) purposes").  Without any allegations as to the nature of the contractual

22   relationships between ARCA and its utility company customers, there is no way to

23   ---

adequately to supervise his department.").  In *In re UTStarcom, Inc. Sec. Litig.*, 617
F. Supp. 2d 964 (N.D. Cal. 2009), cited by plaintiffs (Opp. at 16), executive
resignations supported an inference of scienter because the defendant revealed at
the same time as the CEO's resignation, that the SEC had recommended filing an
enforcement action against the CEO for securities fraud.  *Id.* at 975-76.

[14] Plaintiffs' out-of-Circuit authority is no more on point.  *See Freudenberg v.
E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010) (defendant *sold*
$1.7 million in stock); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 646-47
(S.D.N.Y. 2007) (defendants might have believed that the fraud "could be hidden
indefinitely," unlike here, where the BOE could have audited ARCA at any time).

1   evaluate the speculative, unpled contention that those customers "*might* have

2   believed that sales tax was already included in the price." Opp. at 20 (emphasis

3   added). This newfound theory is also implausible. It makes no sense for ARCA

4   not to collect sales tax on transactions it knew to be taxable, when it could have

5   simply passed those taxes on to its utility company customers. Such an irrational

6   inference must be based on more than a conclusory assertion in an opposition brief.

7        With respect to the AC's two purported confidential witnesses, plaintiffs'

8   opposition only highlights that these witnesses have nothing they can possibly say

9   about defendants' purported state of mind. As to the SCPPA director, plaintiffs

10  concede that "he's only speaking as to what he knows … rather than purporting to

11  testify about any of the Defendants' knowledge." Opp. at 19. Nor do plaintiffs

12  suggest that their other witness, an ARCA competitor, offers any information about

13  defendants' state of mind. Because neither person offers anything about what

14  *defendants* contemporaneously believed, their statements are irrelevant.

15       Finally, plaintiffs downplay the fact that ARCA's independent auditors

16  provided unqualified audit opinions for each of the financial statements contained

17  in the annual reports issued during the putative class period. Plaintiffs argue there

18  is no evidence that the "auditor actually considered the issue and advised ARCA

19  that its decision not to collect and remit sales tax was lawful." Opp. at 18. But this

20  misconstrues the role of an independent auditor: As stated in the reports, the

21  auditors "conducted [their] audits in accordance with the standards of the Public

22  Company Accounting Oversight Board . . . . Those standards require that [the

23  auditors] plan and perform the audit to obtain reasonable assurance about whether

24  the consolidated financial statements are free of material misstatement" and the

25  auditors must opine that "the consolidated financial statements . . . present fairly, in

26  all material respects, the financial position of" the Company "in conformity with

27  U.S. generally accepted accounting principles." *See* RJN, Ex. F. Indeed, Generally

28  Accepted Auditing Standards ("GAAS") require auditors to perform a

1  comprehensive risk assessment which should include observation, inspection and

2  inquiries of management and other employees.  Supp. RJN, Ex. D (GAAS, AICPA,

3  AU-C § 315.06).[15]  That the auditors conducted those examinations, gave

4  unqualified opinions, and failed to raise any issues, is a strong factor weighing

5  against an inference of scienter.[16]

6          The far more compelling inference is that the restatement resulted from, at

7  most, a mistake.  Plaintiffs do not allege with specificity that Messrs. Cameron and

8  Cammerrer had any role in ARCA's initial decision not to collect the sales taxes.

9  Even if they had played some role in that decision, the most compelling and

10  reasonable inference is simply that they failed to spot the issue.  People make

11  mistakes.  The fact of a mistake—no matter how "obvious" that mistake may seem

12  in hindsight—does not by itself constitute fraud under the securities laws.[17]

13  **III.  PLAINTIFFS FAIL TO PLEAD FALSITY WITH THE**
        **PARTICULARITY REQUIRED BY THE PSLRA.**
14

15          Plaintiffs do not dispute that the AC alleges the falsity of ARCA's 2011 and

16  2012 financial statements in exceedingly general fashion.  AC ¶¶34, 35, 51 ("year-

17  end financial results" "contained material errors in [their] income statements and

18  balance sheets").  Plaintiffs contend they should not have to plead falsity with

19  specificity because ARCA has already announced that its financial statements

20  require correction.  Opp. at 20-22.  But the fact of a restatement does not relieve

21

22  [15] Similarly, auditors are required to affirmatively "obtain an understanding of . . . The company's objectives and strategies and those related business risks that might
23  reasonably be expected to result in risks of material misstatement" which includes "examining records or documents, whether internal or external . . . ."  Supp. RJN,
24  Ex. E at A5-3, A8-5 (Auditing Standards, PCAOB Release No. 2010-004).

[16] *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal.
25  2007) (unqualified audit opinion is "'highly probative of an absence of scienter").

26  [17] Plaintiffs also do not address defendants' argument that the boilerplate "scheme" allegations add nothing to plaintiffs' deficient Section 10(b) claims, *see* Opening
27  Br. at 23-24, and have thus conceded the point.  *See, e.g., Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("the Court finds that Plaintiff
28  concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition.").

plaintiffs of their obligation to plead fraud with the heightened particularity required by the PSLRA.  15 U.S.C. §78u-4(b)(1)(B) (plaintiffs must "***specify each statement alleged to have been misleading***" as well as "the reason or reasons why the statement is misleading.") (emphasis added).  It is not enough to point to financial statements and allege they are "false."  *Hansen*, 527 F. Supp. 2d at 1152-53 (PSLRA requirements not met when plaintiff "fails to explain which line items of the statements were false, why the statements were false, [and] the amount by which the financial statements were misstated").[18]

Similarly, plaintiffs' vague allegations of misstatements relating to internal controls (AC ¶¶34-36, 39, 41, 43, 46, 47, 49) are not rendered sufficient merely because the Company has acknowledged unspecified weaknesses in its internal controls.  The PSLRA requires plaintiffs to allege the specific reasons *why* ARCA's representations relating to internal controls were supposedly false.[19]

## IV.    THE CONTROL PERSON CLAIMS SHOULD BE DISMISSED.

Plaintiffs do not dispute that dismissal of their claims under Section 10(b) would require dismissal of their Section 20(a) control person claims.  *See, e.g., Zucco*, 552 F.3d at 990.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the AC.

Dated:  October 5, 2015          ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  _____*/s/ Michael C. Tu*_____
                          Michael C. Tu

Attorneys for Defendants

---

[18] It does not matter that ARCA purportedly did not itself announce the amounts by which the 2011 and 2012 financial statements required correction (or as plaintiffs put it, "chose not to reveal the numbers").  Opp. at 22.  The issue is not just that plaintiffs failed to plead the "exact dollar overstatement" (*id.* at 20), but that the AC does not even identify *which* financial metric(s) plaintiffs allege to be overstated.

[19] In any event, ARCA has acknowledged only that weaknesses existed in its internal controls "***at December 28, 2013 through January 3, 2015***."  AC ¶55 (emphasis added).  Plaintiffs do not explain how this disclosure demonstrates the falsity of the Company's statements regarding internal controls in earlier periods.