```
                    UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

                    HONORABLE JOHN A. KRONSTADT

                UNITED STATES DISTRICT JUDGE PRESIDING

                              -  -  -



JASON FEOLA,                         )
                                     )
                 PLAINTIFF,          )
                                     )
VS.                                  ) CV15-1654-JAK
                                     )
EDWARD R. CAMERON, ET AL.,           )
                                     )
                 DEFENDANTS.         )
_____)
```

```
                REPORTER'S TRANSCRIPT OF PROCEEDINGS

                    LOS ANGELES, CALIFORNIA

                MONDAY, OCTOBER 19, 2015; 11:00 AM
```

```
          _____

              ALEXANDER T. JOKO, CSR NO. 12272
                FEDERAL OFFICIAL COURT REPORTER
              255 EAST TEMPLE STREET, ROOM 181-H
                   LOS ANGELES, CA 90012
                     AJ_CSR@YAHOO.COM
```

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFF:        LAURENCE M. ROSEN
                           THE ROSEN LAW FIRM PA
3                          355 SOUTH GRAND AVENUE
                           SUITE 2450
4                          LOS ANGELES, CA 90071

5

6
     FOR DEFENDANTS:       KEVIN M. ASKEW
7                          ORRICK HERRINGTON AND SUTCLIFFE LLP
                           777 SOUTH FIGUEROA STREET
8                          SUITE 3200
                           LOS ANGELES, CA 90017
9

10                         MICHAEL C. TU
                           ORRICK HERRINGTON AND SUTCLIFFE LLP
11                         777 SOUTH FIGUEROA STREET
                           SUITE 3200
12                         LOS ANGELES, CA 90017

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 19, 2015

 2                               11:00 AM

 3                             - - - - -

 4

 5

 6              THE COURT:  ITEM NO. 8, CV15-1654, JASON FEOLA

 7    V. EDWARD R. CAMERON.

 8                 WOULD YOU STATE YOUR APPEARANCES, PLEASE.

 9              MR. ROSEN:  GOOD MORNING, YOUR HONOR.

10    LAURENCE ROSEN FOR LEAD PLAINTIFFS, KARSAN VALUE FUNDS

11    AND PETER MILLER.

12              THE COURT:  GOOD MORNING, MR. ROSEN.  AND

13    WELCOME BACK.

14              MR. TU:  GOOD MORNING, YOUR HONOR.  MICHAEL

15    TU.  AND WITH ME IS MY COLLEAGUE KEVIN ASKEW OF ORRICK,

16    HERRINGTON, AND SUTCLIFFE ON BEHALF OF THE DEFENDANTS.

17              THE COURT:  GOOD MORNING, MR. TU AND

18    MR. ASKEW.  AND WELCOME BACK AS WELL.

19                 THANK YOU FOR WAITING.

20                 WE'RE HERE ON THE DEFENDANT'S MOTION TO

21    DISMISS THE COMPLAINT.

22                 THERE ARE SOME THINGS THAT AREN'T IN

23    DISPUTE, THE HEIGHTENED-PLEADING STANDARD APPLIES.

24    THERE HAVE -- TO THESE -- WITH RESPECT TO THE ALLEGED

25    SECURITIES FRAUD VIOLATIONS AND THE ALLEGATIONS THAT
```

```
1    HAVE BEEN MADE, IN PART BASED ON A CONFIDENTIAL SOURCE

2    WHO IS A DIRECTOR -- A FORMER -- I DON'T KNOW IF HE'S A

3    FORMER DIRECTOR, BUT HE WAS A DIRECTOR AT THE TIME.

4    IT'S UNDISPUTED WHAT THAT PERSON COMMUNICATED.

5                    IT'S UNDISPUTED THAT THE CEO RESIGNED AND

6    BECAME THE -- IS NOW ONLY THE CHAIR.

7                    IT'S UNDISPUTED THAT THE CFO LEFT THIS

8    DEFENDANT FOR ANOTHER POSITION, BUT REMAINS, ALLEGEDLY,

9    IN SOME FORM OF CONSULTING POSITION WITH RESPECT TO THE

10   DEFENDANT.

11                   I SHOULDN'T SAY "UNDISPUTED." I MEAN,

12   THE CORE OF THIS IS, THAT THE DEFENDANT DIDN'T CHARGE

13   SALES TAX WITH RESPECT TO CERTAIN TRANSACTIONS

14   ASSOCIATED WITH EQUIPMENT. AND IT'S BEEN DETERMINED,

15   BY AT LEAST ONE STATE TAX BOARD, THAT IT SHOULD HAVE.

16   AND THAT THIS RESULTED IN A SUBSTANTIAL LIABILITY,

17   WHICH IN TURN AFFECTED -- SUBSTANTIALLY AFFECTED THE

18   FINANCIAL POSITION OF THE DEFENDANT.

19                   BUT I THINK THE CORE ISSUE IS, WHETHER

20   THERE ARE SUFFICIENTLY DETAILED ALLEGATIONS THAT

21   THESE -- THE MISREPRESENTATIONS, WITH RESPECT TO THE

22   ACCURACY OF THE FINANCIALS, AS WELL AS THE DEVIATIONS

23   FROM CERTAIN REQUIRED ACCOUNTING PRACTICES, WERE

24   DONE -- WERE KNOWINGLY DONE.

25                   MR. ROSEN, AT THIS POINT, I DON'T THINK
```

```
1    I'M PERSUADED THAT THE ALLEGATIONS ARE SUFFICIENTLY
2    DETAILED TO ESTABLISH THAT, SO I'LL HEAR FROM YOU ON
3    THAT.
4               BUT JUST TO GIVE A LITTLE MORE CONTEXT --
5    ALTHOUGH, I'VE REFERRED TO SOME OF THIS.  I DIDN'T
6    MENTION SPECIFICALLY THE RESTATEMENT OF EARNINGS FOR
7    THE QUARTERLY AND ANNUAL PERIODS, THE AVAILABILITY OF A
8    PROCESS TO DETERMINE THE POTENTIAL LIABILITY ON THE TAX
9    SIDE.  THERE'S -- IN SOME RESPECTS, THERE'S --
10   SIMILARLY, WITH RESPECT TO THE CONFIDENTIAL SOURCE
11   WHO'S A DIRECTOR -- I DON'T THINK IT WAS SPECIFICALLY
12   ALLEGED WHAT INFORMATION, IF ANY, THE DIRECTOR MAY HAVE
13   COMMUNICATED TO OTHERS, INCLUDING EITHER OF THE PARTIES
14   WHO IS THE CEO AND CHAIRMAN, THE CAMERON AND CAMMERRER,
15   WHAT, IF ANY, DISCUSSIONS WERE HELD IN CONNECTION WITH
16   THESE ISSUES PRIOR TO THE ISSUANCE OF THE FINANCIALS
17   THAT WERE LATER DETERMINED TO BE INACCURATE, WHETHER
18   THE TAX BOARD PROCESSES THAT ARE -- TO WHICH YOU REFER
19   WERE IN PLACE AT THE RELEVANT TIME.  I'M NOT SAYING
20   THEY WEREN'T.  I JUST DON'T KNOW THAT IT'S BEEN ALLEGED
21   THAT THEY WERE, AND THAT THIS WAS A MEANS OF
22   DETERMINATION.
23               JUST A MINUTE.
24               AND THE -- I MEAN, THAT'S THE CORE OF IT.
25   I MEAN, THAT'S WHAT I WANT TO HEAR ABOUT.
```

1                    I KNOW YOU -- I KNOW YOU DISAGREE ON

2      THIS.  AND I GUESS THE -- NOT "GUESS."  THE ISSUE IS,

3      WHETHER I -- WHETHER THE MOTION SHOULD BE GRANTED WITH

4      YOU -- SO YOU HAVE AN OPPORTUNITY TO PROVIDE ADDITIONAL

5      INFORMATION, OR WHETHER YOU THINK THERE'S ALREADY -- I

6      KNOW YOU "THINK" -- WHETHER YOU CAN PERSUADE ME THERE'S

7      ALREADY ENOUGH DETAILS TO ESTABLISH A REASONABLE --

8      ESTABLISH THE BASIS FOR SCIENTER UNDER THE APPLICABLE

9      HEIGHTENED-PLEADING STANDARDS.

10                    LET ME HEAR FROM YOU, MR. ROSEN.

11                MR. ROSEN:  THANK YOU, YOUR HONOR.

12                    YOUR HONOR, SO, REALLY, THE ONLY CRITICAL

13     ISSUE ON THE MOTION IS SCIENTER, AS YOU POINT OUT.  AND

14     THE REASON FOR THAT IS, IS THAT THERE IS A RESTATEMENT

15     OF FINANCIAL STATEMENTS.  AND FOR THE TWO MOST RECENT

16     YEARS, WE PROVIDED THE DETAILS OF EACH QUARTER AND

17     ANNUAL RESTATEMENT AMOUNT AND WHAT WAS BEING RESTATED

18     AND THE SIGNIFICANT MATERIAL AMOUNTS.  AND UNDER THE

19     CASE LAW AND UNDER S.E.C. REGULATIONS, A RESTATEMENT IS

20     PRIMA FACIE EVIDENCE OF A FALSE AND MISLEADING

21     FINANCIAL STATEMENT.  AND I DON'T THINK THAT THE

22     DEFENDANTS CAN DISAGREE WITH THAT.

23                    THEY ADDRESS 2011 AND 2012 IN WHICH WE

24     DIDN'T HAVE THE SPECIFIC NUMBERS BECAUSE THEY HADN'T

25     BEEN RESTATED YET.  BUT WE DIDN'T.  BUT FOR 2013 AND

```
1    2014, THE TWO MOST RECENT YEARS AND MOST SIGNIFICANT

2    YEARS, WHICH ARE OVER 80 PERCENT OF THEIR AMOUNTS AT

3    ISSUE, WE PROVIDED THE DETAIL.

4                   SO, REALLY, THE ONLY QUESTION IS

5    SCIENTER.  AND THE TELLABS --

6              THE COURT:  DID YOU MEAN TO SAY -- DID YOU

7    JUST SAY THAT BECAUSE THERE'S A RESTATEMENT, AS THERE

8    HAS BEEN HERE AT LEAST AS TO TWO YEARS, THAT THAT IS

9    EVIDENCE OF SCIENTER?

10             MR. ROSEN:  NO, YOUR HONOR.

11                  PRIMA FACIE EVIDENCE OF FALSE AND

12   MISLEADING FINANCIAL STATEMENTS.

13             THE COURT:  I UNDERSTAND.

14             MR. ROSEN:  AND I WILL GET TO HOW IT RELATES

15   TO SCIENTER A BIT FURTHER DOWN THE -- DOWN THAT LINE.

16                  SO TELLABS IS THE SUPREME COURT CASE

17   WHICH SET OUT THE STANDARD FOR SCIENTER.  AND,

18   ESSENTIALLY, THE PLAINTIFF HAS TO -- HAS TO SHOW THAT,

19   GIVEN THE FACTS ALLEGED, THAT IT'S AT LEAST AS

20   COMPELLING AS A NON-CULPABLE INFERENCE.  AND SO YOU

21   LOOK AT ALL THE FACTS HOLISTICALLY.  AND YOU PUT ALL

22   THE FACTS ON THE SCALE.  SO ALL THE FACTS THAT THE

23   DEFENDANTS SAY SHOW A LACK SCIENTER, PUT IT ON THEIR

24   SIDE OF THE SCALE.  AND ALL THE FACTS THAT WE SAY SHOW

25   SCIENTER ON OUR SIDE OF THE SCALE.  AND IF IT'S
```

```
 1    EQUAL -- IF OUR SHOWING IS EQUAL TO OR GREATER THAN,

 2    THEN WE WIN THE MOTION.  WE SHOW SCIENTER.

 3              THE COURT:  AT THE TIME OF PLEADING?

 4              MR. ROSEN:  YES, WHEN -- THE MOTION.

 5                   AND SO THE TIE GOES TO THE PLAINTIFFS.

 6    IF IT'S EQUALLY COMPELLING, THEN THE TIE GOES TO THE

 7    PLAINTIFF UNDER TELLABS.

 8                   IN THIS SITUATION, THE FACTS, IF YOU LOOK

 9    AT THEIR MOST BASIC, IT REALLY IS IMPOSSIBLE TO

10    BELIEVE -- I MEAN, TO ACCEPT THEIR NON-CULPABLE

11    INFERENCE.  THEIR NON-CULPABLE INFERENCE IS, "WE, IN

12    GOOD FAITH, BELIEVED THAT WE DIDN'T HAVE TO PAY SALES

13    TAX BECAUSE THE APPLIANCES WE WERE SELLING WERE GOING

14    TO BE USED BY LOW-INCOME PERSONS AND WERE BEING PAID

15    FOR BY RATE PAYOR FUNDS."  THAT'S THEIR NON-CULPABLE

16    INFERENCE.

17                   AND ON TOP OF THAT, THEY SAY, "AND ALSO

18    OUR AUDITOR INITIALLY SIGNED OFF ON THE FINANCIAL

19    STATEMENTS."  THOUGH, LATER, THE AUDITOR SAID THEY HAD

20    TO RESTATE THEM.  BUT, INITIALLY, THEY SIGNED OFF.

21    THAT'S THEIR NON-CULPABLE INFERENCE.  AND THEN LET'S --

22    THAT'S ON THEIR SIDE.

23                   SO LET'S LOOK AT THE PLAINTIFF'S SIDE OF

24    THE SCALE.  FIRST, WE'RE TALKING ABOUT A CEO AND A CFO

25    THAT ARE HIGHLY EXPERIENCED IN THE RETAIL INDUSTRY.
```

```
 1        MR. CAMERON HAS BEEN IN THIS BUSINESS HIS WHOLE LIFE.
 2   FOR 35 YEARS, HE'S RUN ARCA.  IT'S A RETAIL APPLIANCE
 3   BUSINESS.  AND EVERYONE IN THE RETAIL BUSINESS IN EVERY
 4   STATE IN THIS UNION KNOWS THAT WHEN HE SELLS AN
 5   APPLIANCE, HE COLLECTS A SALES TAX.  AND HE HAS TO PAY
 6   A SALES TAX IN EVERY STATE.  WELL, I DON'T KNOW IF
 7   EVERY STATE; BUT I -- MAYBE THERE'S A STATE WITHOUT A
 8   SALES TAX.  I'M NOT AWARE OF IT.  BUT HE KNOWS THAT.
 9   HE KNOWS IN CALIFORNIA, HE'S BEEN PAYING SALES TAX FOR
10   YEARS AND YEARS.  AND HE KNOWS THAT IN ALL THE SALES,
11   HE PAYS A SALES TAX.
12             AND MR. CAMMERRER, WHO IS A CPA, WHO
13   IS -- WAS THE CONTROLLER.  BEGINNING 2008, HE WAS THE
14   CONTROLLER.  AND THEN 2012, HE BECAME VICE -- VP OF
15   FINANCE AND CFO.  SO HE -- HE, FOR MANY YEARS, HAS BEEN
16   A -- YOU KNOW, AS A CONTROLLER, YOU KNOW, YOU
17   ARE OVERSEEING THE PAYMENT OF SALES TAXES.  THAT'S YOUR
18   JOB.  I MEAN, YOU MAKE SURE THAT YOU COLLECT THE
19   REVENUE, WHERE THE MONEY GOES AND PAY YOUR SALES TAX
20   AND PAY YOUR INCOME TAX.
21             SO THESE GUYS HAVE BEEN RUNNING A RETAIL
22   BUSINESS FOR MANY YEARS.  AND THEY KNOW THAT FOR THEM
23   TO NOT CHARGE SALES TAX, THEY NEED AN EXEMPTION
24   CERTIFICATE.  AND EVERYBODY WHO -- IF YOU RUN A
25   NON-PROFIT -- IN SOME CASES, NON-PROFITS ARE ENTITLED
```

1    TO -- YOU KNOW, YOU HAVE AN EXEMPTION CERTIFICATE.  AND

2    IF I WERE TO TELL A RETAILER, "I'M EXEMPT FROM SALES

3    TAX," HE WOULD SAY, "THAT'S GREAT.  SHOW ME YOUR

4    EXEMPTION CERTIFICATE.  OTHERWISE, I'M COLLECTING A

5    SALES TAX."  AND THAT'S THE WAY IT'S DONE IN EVERY

6    BUSINESS IN AMERICA.

7                   NO ONE IS GOING TO FAIL TO COLLECT A

8    SALES TAX WITHOUT A PROPER EXEMPTION CERTIFICATE

9    ACCEPTED IN GOOD FAITH.

10              THE COURT:  YOU CONTEND THAT THE SALES AT

11   ISSUE COMPRISE ABOUT ONE-THIRD OF THE REVENUES?

12              MR. ROSEN:  THIS AREA OF BUSINESS WAS ABOUT 35

13   PERCENT OF THEIR REVENUE.

14              THE COURT:  32 PERCENT IN 2013.  RISING TO 35

15   PERCENT OF TOTAL REVENUE IN 2014; RIGHT?

16              MR. ROSEN:  THAT SOUNDS ABOUT RIGHT.  I

17   THINK --

18              THE COURT:  I THINK THAT'S WHAT'S ALLEGED.

19              BUT HERE'S MY QUESTION:  DOES THAT MEAN

20   THAT THE REMAINING 65-PLUS PERCENT OF SALES WERE RETAIL

21   SALES FOR WHICH SALES TAXES WERE PAID?

22              MR. ROSEN:  YES.  THAT'S THE IMPLICATION, YES.

23              THE COURT:  OKAY.

24              MR. ROSEN:  BECAUSE THERE WAS NO EVIDENCE THAT

25   THE BOARD OF ESTIMATE BELIEVED THAT TAXES WERE MISSING

```
 1    ON THE OTHER SALES.
 2                    AND IT'S NOT CLEAR THAT A HUNDRED PERCENT
 3    OF THE 35 PERCENT, THE TAXES WEREN'T PAID.  I DON'T
 4    THINK --
 5              THE COURT:  HERE'S MY QUESTION:  HOW DOES THAT
 6    FIT INTO YOUR ANALYSIS OF LAYING -- COMPARING THE
 7    PARTIES' POSITIONS SIDE BY SIDE?
 8                    IF THE DEFENDANTS, HYPOTHETICALLY, WERE
 9    PAYING SALES TAX ON AT LEAST 60 PERCENT OF ALL SALES,
10    AND MAYBE MORE, HOW DOES THAT BEAR ON WHETHER THERE'S
11    SCIENTER AS TO THIS -- THIS SEGMENT OF THEIR SALES?
12              MR. ROSEN:  THEY'RE EXPERIENCED RETAILERS.
13    AND THEY KNOW THAT THERE ARE SOME CUSTOMERS -- FOR
14    EXAMPLE, THE FEDERAL GOVERNMENT WOULD BE EXEMPT FROM
15    SALES TAX.  BUT THEY ALSO KNOW THAT FOR THEM TO MAKE A
16    SALE AND NOT COLLECT A TAX, THEY ARE REQUIRED TO GET AN
17    EXEMPTION CERTIFICATE.
18                    IF THEY ARE AUDITED AND THEY DON'T HAVE
19    AN EXEMPTION CERTIFICATE, THEY'RE LIABLE FOR TAX.  AND
20    THAT WILL FOLLOW THE BUSINESS FOREVER.  THEY KNOW THAT.
21    ANYONE WHO RUNS A RETAIL BUSINESS, WHETHER IT'S A
22    BODEGA OR AN APPLIANCE, EVERYBODY KNOWS THAT YOU HAVE
23    TO COLLECT AND PAY YOUR SALES TAX.
24                    AND THESE ARE -- THIS GUY IS IN THIS
25    BUSINESS FOR 35 YEARS.  HE'S BEEN COLLECTING SALES
```

1     TAXES FOR 35 YEARS.

2               AND THE OTHER THING, YOUR HONOR, IS, THEY

3     SAID IT WAS A CONSCIOUS DECISION THAT THEY WEREN'T

4     GOING TO PAY.  THEY DIDN'T SAY, "OOPS, WE FORGOT TO

5     PAY."  THEY SAID, "WE DETERMINED THAT THIS EXEMPTION

6     APPLIED."  AND THAT'S GREAT.  THAT'S THEIR -- THAT'S

7     THEIR NON-CULPABLE INFERENCE, "WE BELIEVED AN EXEMPTION

8     APPLIED."

9               BUT LOOK AT THE OMNICARE DECISION.  IF

10    SOMEBODY SAYS, "WE BELIEVE SOMETHING," THEY NEED A GOOD

11    FAITH BASIS.  THEY NEED A REASONABLE BASIS TO MAKE

12    THIS -- THIS DEFENSE, THIS -- THEY NEED -- THEY CAN'T

13    JUST SAY, "I BELIEVE IN THE TOOTH FAIRY."  THEY NEED TO

14    SAY, "OKAY, SO YOU BELIEVED" -- "MR. CAMERON, YOU

15    BELIEVED THERE WAS AN EXEMPTION.  ON WHAT BASIS?"

16              LOOK AT THE TAX REGULATION, WHICH IS

17    READILY AVAILABLE ONLINE.  IT HAS ABSOLUTELY NO

18    EXEMPTION -- IT HAS A WHOLE LIST OF EXEMPTIONS, WHICH

19    WE ATTACHED TO OUR OPPOSITION BRIEF.  NOT A SINGLE ONE

20    OF THOSE EXEMPTIONS ARE ANYWHERE NEAR, ARGUABLY,

21    RELATED TO THIS BUSINESS.  AND THEY HAVE NOT, TO THIS

22    MOMENT, IN ANY VENUE, SUGGESTED THAT ANY ONE OF THOSE

23    EXEMPTIONS APPLY.

24              SO MR. CAMERON WAS INVENTING AN EXEMPTION

25    FOR HIMSELF, PERHAPS.  I DON'T KNOW.

```
 1              THE COURT:  LET ME GO BACK TO WHERE YOU
 2    STARTED, WHICH WAS COMPARING THE PARTIES' POSITIONS
 3    SIDE BY SIDE.  AND YOUR POSITION IS, IF VIEWED
 4    HOLISTICALLY, THEY'RE IN BALANCE.  AND THEN THE
 5    PLAINTIFF HAS ESTABLISHED SUFFICIENT -- HAS
 6    SUFFICIENTLY ALLEGED SCIENTER.
 7                   IS THAT WHAT --
 8              MR. ROSEN:  YES, YOUR HONOR.
 9              THE COURT:  OKAY.  THE AMOUNT OF SALES --
10    WELL, YOUR POSITION IS, THAT THEY WERE EXPERIENCED.
11    THEY KNEW, OR REASONABLY SHOULD HAVE KNOWN, THAT SALES
12    TAXES ARE PART OF THE PROCESS OF SELLING GOODS OF THIS
13    TYPE.  THAT THEY HAD BEEN DOING SO FOR DECADES.  AND,
14    THEREFORE, IF THEY -- IF THEY FAILED TO DO SO WITHOUT
15    AN EXEMPTION IN THIS CIRCUMSTANCE, THAT'S EVIDENCE THAT
16    THEY DID SO KNOWINGLY?
17              MR. ROSEN:  YES, YOUR HONOR.
18                   AND I CAN -- I HAVE ADDITIONAL FACTS THAT
19    WE'VE PLED THAT SHOW THAT.
20                   BECAUSE THEY SAID THAT IT WAS A CONSCIOUS
21    DECISION.  THEY ADMIT IT'S A CONSCIOUS DECISION.  THEY
22    SAID, "WE DIDN'T COLLECT SALES TAX BECAUSE WE BELIEVED
23    AN EXEMPTION COULD APPLY."  THAT WAS IN THEIR AUGUST
24    6TH PRESS RELEASE.
25                   AND THEY SAID THE EXEMPTION WAS -- THAT
```

1    THEY THOUGHT COULD APPLY WAS BECAUSE IT BENEFITED

2    LOW-INCOME PEOPLE AND IT WAS PAID FOR BY RATE-PAYOR

3    FUNDS.  THAT WAS THEIR EXEMPTION.  BUT THERE IS NOTHING

4    IN THE REGULATION ANYWHERE CLOSE TO SUCH AN EXEMPTION.

5    IT DOESN'T EXIST.  IT'S LIKE, "I BELIEVE IN THE TOOTH

6    FAIRY."

7              AND THE REGULATIONS SPECIFICALLY SAY

8    THAT, TO SUPPORT AN EXEMPTION FROM A PURCHASER, YOU

9    NEED TO GET THE CERTIFICATE SAYING THEY'RE EXEMPT.  AND

10   THEY NEVER GOT THAT.

11             IN FACT, AFTER THE B.O.E. CAME TO THEM ON

12   AUGUST 6TH, 2014, ONLY THEN DID MR. CAMERON MEET WITH

13   THE SCPPA, THE POWER AUTHORITY, AND SPEAK TO THIS

14   DIRECTOR, WHICH WE QUOTED.  AND ONLY THEN DID HE FIRST

15   ASK IF THEY HAD ANY EVIDENCE OF AN EXEMPTION

16   CERTIFICATE.  TO WHICH THE DIRECTOR REPLIED, "I DON'T

17   KNOW WHAT YOU'RE TALKING ABOUT.  I'VE NEVER HEARD OF

18   SUCH A THING."

19             THE COURT:  WHAT ARE THE OTHER THINGS THAT YOU

20   WOULD ADD TO YOUR LIST?

21             MR. ROSEN:  THE VERY TIMELY RESIGNATION --

22   THIS IS A BUSINESS THIS MAN BUILT HIMSELF.  USUALLY A

23   GUY WHO BUILDS A BUSINESS OVER 35 YEARS DOESN'T JUST

24   VANISH WITHOUT ANY SUCCESSION PLAN.  AND IT'S JUST THE

25   TIMING -- YOU KNOW, SIX DAYS AFTER HE WAS CAUGHT BY THE

1    B.O.E., HE RESIGNS WITHOUT A SUCCESSOR IN PLACE.  AND

2    THAT'S A -- YOU KNOW, THAT'S A -- IF YOU LOOK AT THE

3    CASE LAW THAT -- THAT THERE'S THE --

4            THE COURT:  WHAT IS THE SIGNIFICANCE, IF ANY,

5    THAT HE REMAINED AS CHAIR, AND THAT HE WAS IN HIS 70'S

6    WHEN HE RESIGNED?

7            MR. ROSEN:  I THINK THAT THE SIGNIFICANCE IS,

8    IT WAS HIS BUSINESS THAT HE BUILT OVER TIME.  AND HE

9    PROBABLY HAD INVALUABLE INSIGHT INTO HOW THAT BUSINESS

10   WAS RUN.

11           THE COURT:  BUT IF HE WERE TERMINATED FROM HIS

12   CEO POSITION BECAUSE OF HIS -- BECAUSE OF THIS ISSUE,

13   THEN WHY WOULD THEY KEEP HIM ON AT ALL?

14           MR. ROSEN:  OH, HE RESIGNED.

15           WELL, FIRST OF ALL, THERE'S PROBABLY A

16   PERIOD OF TIME WHEN THERE'S SOME INVESTIGATION.  AND

17   THEN IN THE INTERIM, THEY'RE NOT GOING TO LET HIM --

18   THEY DIDN'T DISCLOSE EXACTLY.

19           BUT UNDER ZUCCO, IT'S JUST AN

20   UNCHARACTERISTIC HIRING OR TERMINATION EVENT.  AND THIS

21   IS HIGHLY UNCHARACTERISTIC.  IF YOU BUILT A BUSINESS

22   OVER 35 YEARS, YOU WOULDN'T JUST JUMP SHIP WITHOUT

23   HAND-PICKING A SUCCESSOR.  AND WITH A PUBLIC COMPANY,

24   INTRODUCING YOUR SUCCESSOR TO THE FINANCIAL COMMUNITY

25   OVER TIME AND MAKING SURE THEY LIKE HIM SO THE STOCK

```
 1   DOESN'T TANK IF YOU PICK THE WRONG GUY.
 2                SO IT WOULD BE -- I MEAN, FOR THIS TO --
 3   TO NOT -- I MEAN, IT'S HIGHLY UNLIKELY THAT THIS WAS
 4   UNRELATED TO -- TO THIS TAX FRAUD ISSUE.
 5                IT HAPPENED SIX DAYS LATER WITHOUT ANY
 6   SUCCESSOR.  CAUGHT EVERYBODY BY SURPRISE.  AND IT'S
 7   OBVIOUSLY NOT GOOD FOR THE COMPANY.  AND IF HE WAS
 8   ACTING IN THE -- YOU KNOW, IF HE WASN'T BEING FORCED
 9   OUT, HE WOULD HAVE -- HE WOULD HAVE HAND-PICKED A
10   SUCCESSOR AND OVER TIME, YOU KNOW, HAD HIM SLOWLY
11   INTRODUCED INTO THE BUSINESS AND INTO THE -- YOU KNOW,
12   TO THE FINANCIAL COMMUNITY, TO THE INVESTMENT ANALYSTS,
13   AND ALL OF THAT.  THAT'S HOW IT'S DONE AT -- AT PUBLIC
14   COMPANIES.
15                THE COURT:  WHAT ELSE IS ON YOUR LIST?
16                MR. ROSEN:  WELL, IT'S SUCH -- UNDER -- UNDER
17   ZUCCO AND MCKESSON, AND ALSO THE EAGLE CASE WE CITE,
18   THE PAYMENT OF -- THE REQUIREMENT TO PAY SALES TAX IS
19   SUCH A SIMPLE AND OBVIOUS RULE.
20                THE COURT:  YOU'VE BEEN OVER THAT.
21                MR. ROSEN:  AND THERE'S THE ORIENT PAPER CASE
22   IN WHICH JUDGE FAIRBANK FOUND THAT A SIMPLE AND OBVIOUS
23   ACCOUNTING RULE FOR RELATED PARTY TRANSACTIONS --
24   MEDICIS, ANOTHER CASE.
25                AND WHEN YOU COMBINE A SIMPLE AND OBVIOUS
```

```
1    RULE WITH A RESTATEMENT OF THREE YEARS OF FINANCIALS OF
2    A SUBSTANTIAL MAGNITUDE, THAT'S INDICATIVE OF SCIENTER
3    UNDER THE CASE LAW.
4              THE COURT:  ALL RIGHT.  I UNDERSTAND.
5              MR. ROSEN:  AND SO I THINK, YOUR HONOR --
6    THERE'S ALSO, JUDGE, THE FACT -- THE MEDICIS CASE WE
7    CITE AND -- NOT MEDICIS, SORRY.  MIMEDX, THAT'S A
8    NORTHERN DISTRICT OF GEORGIA WHERE JUDGE THRASH FOUND
9    THAT THERE WAS A PHARMACEUTICAL COMPANY THAT CLAIMED AN
10   EXEMPTION FROM FDA REGULATION TO SELL HIS PRODUCT.  AND
11   THEN THE -- THE FDA SAID, "NO YOU DON'T HAVE AN
12   EXEMPTION.  WHAT WERE YOU THINKING?"  AND THEN WE
13   POINTED OUT TO THE COURT THAT THE FDA HAS A SPECIFIC
14   REGULATION THAT SAYS, IF YOU THINK THERE'S AN
15   EXEMPTION, YOU HAVE TO FOLLOW THESE RULES AND NOTIFY US
16   OR ASK US FOR A RULING, AND WE WILL GIVE YOU EITHER AN
17   INFORMAL OR FORMAL RULING.  AND HE FOUND THAT THEIR
18   FAILURE TO GO THROUGH THAT PROCESS UNDER THE REGULATION
19   INDICATED SCIENTER.
20              AND I THINK WE HAVE THE SAME THING HERE.
21   WE HAVE A PROCESS -- THE B.O.E. --
22              THE COURT:  YOU'VE MENTIONED THAT.  I GOT
23   THIS -- I'VE -- YOU'VE SAID THIS EARLIER.
24              MR. ROSEN:  OKAY.
25              THE COURT:  ANYTHING NEW?
```

1      MR. ROSEN:  SO THE LAST THING I WOULD SAY IS,

2  THE SUGGESTION THAT A -- THE FACT THAT THE AUDITOR

3  SIGNED OFF IS -- IS -- DOES NOT WEIGH AT ALL.  I WOULD

4  GIVE IT LESS THAN A GRAM ON THEIR SIDE OF THE SCALE.

5  AND THE REASON FOR THIS, JUDGE, IS, ALL THOSE THREE

6  CASES THEY CITE, THE ICON (PHONETIC) CASE IN THE THIRD

7  CIRCUIT, THE STAVROFF CASE IN THE SIXTH CIRCUIT, AND

8  THE CASE IN THE CENTRAL DISTRICT, WHICH WAS HANSEN,

9  THOSE THREE CASES WHERE -- THERE WAS NO RESTATEMENT.

10  SO WITHOUT A RESTATEMENT, THERE WAS NO ADMISSION THAT

11  THERE WAS A GAAP VIOLATION.

12      HERE, YOU HAVE A RESTATEMENT AND -- WHICH

13  IS AN ADMISSION OF THE GAAP VIOLATION.  AND THAT'S WHY

14  THE SIGN-OFF -- HERE, THE AUDITOR SAID, "NO, THIS WAS A

15  MISTAKE."  SO FOR A RESTATEMENT, YOU NEED -- YOU NEED

16  TO HAVE ERRORS.  AND THIS WAS A MISUSE OF FACT.  THE --

17  OR ERROR IN FACT IN THAT THERE WAS TAX TO BE PAID THAT

18  WASN'T PAID.  AND WHEN THE AUDITORS FOUND OUT ABOUT IT,

19  THEY SAID, "YOU HAVE GOT TO RESTATE."

20      AND IN THE ICON -- IN THE ICON CASE, YOU

21  KNOW, IT WAS NOT ONLY NOT A RESTATEMENT, BUT A SECOND

22  AUDITOR SUPPORTED THE FIRST AUDITOR AND SAID, "NO

23  RESTATEMENT WAS REQUIRED."  AND THAT'S WHY THERE WAS --

24  HERE, THERE'S A RESTATEMENT.  THERE'S AN ADMISSION IT'S

25  FALSE.  HAD THEY KNOWN THE FACTS, THEY WOULD HAVE DONE

```
1    IT THE RIGHT WAY THE FIRST TIME.  SO THAT'S WHY IT

2    DOESN'T HELP THEM.

3                    AND, LASTLY, THE FAILURE TO REPORT TAXES

4    IS AN INTERNAL CONTROL VIOLATION, WHICH IS THE

5    RESPONSIBILITY OF THE CEO AND THE CFO.  THEY SIGN THOSE

6    CERTIFICATIONS.  AND THOSE INTERNAL CONTROL VIOLATIONS

7    WERE THEIR RESPONSIBILITY.

8                    ANYWAY, YOUR HONOR, I DON'T HAVE ANYTHING

9    FURTHER.

10                   MAY I ANSWER ANY QUESTIONS?

11              THE COURT:  NO.  YOU HAVE DONE THAT.  THANK

12   YOU, MR. ROSEN.

13              MR. ROSEN:  THANK YOU, JUDGE.

14              THE COURT:  MR. TU OR MR. ASKEW?

15                   DO YOU AGREE, MR. TU, WITH THE -- WITH

16   RESPECT TO THE STANDARD?

17                   DO YOU AGREE THAT IF THE PARTIES'

18   POSITIONS ARE IN EQUIPOISE --

19              MR. TU:  NO, YOUR HONOR.

20              THE COURT:  -- THAT THAT'S SUFFICIENT?

21              MR. TU:  I'M SORRY, I DIDN'T MEAN TO INTERRUPT

22   YOU.

23                   NO, I ABSOLUTELY DO NOT AGREE.

24              THE COURT:  WHAT DO YOU CONTEND THE STANDARD

25   IS?
```

```
 1              MR. TU:  SO THERE IS A VERY LONG -- AND IT'S

 2    BRIEFED IN OUR -- A LONG LINE OF CASES IN THE NINTH

 3    CIRCUIT THAT HAVE BEEN UPHELD AND HAVE COME OUT SINCE

 4    THE TELLABS CASE, AND OTHER CASES FROM THE SUPREME

 5    COURT, IN WHICH IT'S VERY CLEAR NOW THAT, UNDER

 6    TELLABS, AS WELL AS CONTROLLING NINTH CIRCUIT

 7    AUTHORITY, YES, THE STANDARD NOW IS THAT IT MUST BE A

 8    COGENT AND COMPELLING INFERENCE.  AND WHAT THAT MEANS

 9    IS, THERE NEEDS TO BE DETAILED FACTS THAT ARE PLED THAT

10    ESTABLISH A STRONG INFERENCE OF SCIENTER.  AND A STRONG

11    INFERENCE OF SCIENTER MEANS FACTS SHOWING INTENTIONAL

12    MISCONDUCT OR DELIBERATE RECKLESSNESS UNDER NINTH

13    CIRCUIT LAW.  AND THAT'S VERY CLEAR.

14              THAT IS NOT 51 PERCENT.  THAT IS WHY

15    SECURITIES FRAUD CASES ARE DIFFERENT FROM OTHER TYPES

16    OF CASES IN WHICH 51 PERCENT, OR MAYBE LESS, MIGHT BE

17    ENOUGH TO GET YOU BY.

18              THE PRIVATE SECURITIES LITIGATION REFORM

19    ACT, THAT'S BEEN THE GENESIS OF THIS

20    HEIGHTENED-PLEADING STANDARD.  I THINK THAT'S BEEN WELL

21    BRIEFED OVER THE YEARS BY A NUMBER OF COURTS.  SO I

22    DON'T THINK THAT'S --

23              THE COURT:  MR. ROSEN'S POINT IS THAT SALES

24    TAX IS NOT MYSTERIOUS.  YOU SELL GOODS.  MOST, IF NOT

25    ALL, STATES HAVE A SALES TAX.  THERE WAS A METHODOLOGY
```

1    FOR DETERMINING, THROUGH A STATE TAX BOARD, WHETHER A

2    PARTICULAR SALE IS EXEMPT.  YOU GET A CERTIFICATE OF

3    EXEMPTION TO PROTECT YOURSELF.

4              WHAT ABOUT THAT?

5         MR. TU:  SO I THINK THE -- WHAT I WOULD SAY

6    ABOUT THAT IS, THE ARGUMENT THAT MR. ROSEN GIVES, THAT

7    THESE WERE, QUOTE, "HIGHLY-EXPERIENCED EXECUTIVES IN

8    THE RETAIL INDUSTRY AND EVERY ONE IN THE RETAIL

9    INDUSTRY MUST KNOW," AS A THRESHOLD MATTER, NONE OF

10   THIS IS PLED IN THE COMPLAINT.  THIS IS ALL ARGUMENT IN

11   THE OPPOSITION.

12             BUT EVEN IF YOU PUT THAT ASIDE, I THINK

13   UNDER THE ANALYSIS UNDER ZUCCO PARTNERS AND THE OTHER

14   DUAL-INQUIRY ANALYSIS THAT YOU ARE TO PERFORM IN THE

15   NINTH CIRCUIT ON A MOTION TO DISMISS ANY SECURITIES

16   FRAUD CASE, YOU NEED TO LOOK AT NOT ONLY WHAT'S PLED IN

17   THE COMPLAINT, BUT WHETHER THAT THEORY THAT THEY'RE

18   PLEADING IS PLAUSIBLE IN THE CONTEXT NOT ONLY OF WHAT

19   THEY PLEAD, BUT ALSO JUDICIOUSLY-NOTICEABLE FACTS,

20   WHICH ARE PROPER TO CONSIDER ON A MOTION TO DISMISS IN

21   THIS TYPE OF MATTER.

22             AND WHAT I WOULD POINT OUT IS THAT, FIRST

23   OF ALL, EVERY -- HIS ALLEGATION THAT EVERY ONE IN THE

24   RETAIL SECTOR KNOWS TO COLLECT SALES TAX, THERE'S NO

25   ALLEGATION IN THE COMPLAINT ANYWHERE THAT THE COMPANY

```
1    OR ANY OF THE DEFENDANTS HAD PREVIOUSLY HAD ANY

2    OBLIGATION TO COLLECT SALES AND USE TAXES ON ANY

3    SIMILAR RECYCLING-AND-EXCHANGE PROGRAM IN OTHER STATES

4    OR IN CALIFORNIA.  SO THAT'S NOT EVEN ALLEGED AS A

5    STARTING POINT.

6              THE COURT:  JUST TAKE A STEP BACK.

7              MR. TU:  SURE.

8              THE COURT:  IF THERE WERE ALLEGATIONS THAT

9    STATED THAT THERE WAS SUBSTANTIAL EXPERIENCE OF THE

10   EXECUTIVES IN THE RETAIL FIELD, AND THAT THEY WERE,

11   THEREFORE, AWARE OF THE NORM, WHICH IS CONSUMER GOODS

12   SOLD RESULTS IN A SALE OF -- EXCUSE ME, A SALES TAX

13   CHARGE IS MADE, WOULD THEY HAVE TO GO FURTHER TO SAY

14   THAT THIS UNIQUE PROGRAM THAT -- DO THEY HAVE TO SAY

15   MORE THAN THAT?

16             MR. TU:  THEY DO BECAUSE IT HAS TO PASS THE

17   PLAUSIBILITY TEST.  AND THE FACT IS, THAT THIS IS --

18   WE'RE GOING BEYOND THE COMPLAINT, OBVIOUSLY, NOW

19   BECAUSE IT'S NOT ALLEGED IN THE COMPLAINT.

20                  BUT JUST TO ADDRESS THAT, THE FACT IS, IS

21   THAT IN MANY, IF NOT MOST OF THE OTHER STATES IN WHICH

22   THE COMPANY DOES THIS TYPE OF PROGRAM, IT IS NOT

23   REQUIRED TO COLLECT SALES AND USE TAXES.  AND SO --

24   AGAIN, THIS IS BEYOND THE COMPLAINT, AND IT'S NOT

25   ALLEGED IN THERE.  BUT I DON'T BELIEVE THAT JUST A
```

1    CONCLUSORY ASSERTION THAT THEY'RE REQUIRED TO DO THIS

2    WOULD BE SUFFICIENT OR COME CLOSE AT ALL TO

3    ESTABLISHING A STRONG INFERENCE OF SCIENTER,

4    PARTICULARLY WHEN YOU LOOK AT ALL OF THE OTHER -- YOU

5    KNOW, THE BIGGER PICTURE, ALL OF THE OTHER FACTS THAT

6    WE'VE MENTIONED IN OUR BRIEFS.

7            THE COURT:  WELL, THIS IS BEYOND THE

8    COMPLAINT.

9                DO YOU KNOW APPROXIMATELY HOW MANY STATES

10   HAVE PROGRAMS SIMILAR TO THIS ONE?

11           MR. TU:  WELL, WHAT I CAN TELL YOU -- AND,

12   AGAIN, THIS IS BEYOND THE COMPLAINT.  BUT I CAN TELL

13   YOU THAT THERE ARE AT LEAST THREE OR FOUR OTHER STATES

14   IN WHICH THE COMPANY CURRENTLY DOES BUSINESS IN WHICH

15   IT SPECIFICALLY IS NOT REQUIRED TO PAY SALES AND USE

16   TAXES FOR A VERY SIMILAR TYPE OF EXCHANGE --

17   PUBLICLY-FUNDED UTILITY EXCHANGE PROGRAM.

18           THE COURT:  DO YOU KNOW WHETHER IT'S REQUIRED

19   TO GET A CERTIFICATE OF EXEMPTION BY THOSE STATES?

20           MR. TU:  IT WAS NOT REQUIRED.  IN SOME OF THE

21   STATES AFTER THE RESTATEMENT HAPPENED, AS AN

22   AFFIRMATIVE STEP, THEY WENT OUT AND GOT A -- I THINK,

23   FOR EXAMPLE, I BELIEVE AUSTIN, TEXAS IS AN EXAMPLE OF

24   ONE WHERE THEY HAD NOT BEEN PAYING SALES AND USE TAX.

25   THEY HAD NEVER BEEN REQUIRED TO.  BUT AS A RESULT OF

1    THE RESTATEMENT, JUST TO BE SAFE, THEY THEN HIRED -- A

2    CONSULTANT CAME IN, AND THEY BEGAN TO GO THROUGH THAT

3    PROCESS.

4         THE COURT:  IN CALIFORNIA, WHAT IS YOUR -- DO

5    YOU HAVE A POSITION AS TO WHETHER GETTING AN EXEMPTION

6    CERTIFICATE IS REQUIRED?

7         MR. TU:  I WOULD LIKE TO ADDRESS THAT, AND I

8    AM GLAD YOU BROUGHT THAT UP.  THERE WERE A NUMBER OF

9    THINGS THAT YOUR HONOR SAID AT THE BEGINNING THAT YOU

10   SAID YOU SAID BELIEVE WERE UNDISPUTED.  AND IF IT'S

11   OKAY, I WOULD LIKE TO ACTUALLY CORRECT A FEW OF THOSE

12   THINGS AS TO WHAT'S DISPUTED AND WHAT'S NOT DISPUTED.

13        THE COURT:  TO BE CLEAR, WHEN I WAS USING THE

14   WORDS "DISPUTED" AND "UNDISPUTED," WE'RE AT THE

15   PLEADING STAGE HERE.  SO I WAS NOT SUGGESTING THAT

16   THERE WAS A COMPLETE FACTUAL RECORD.  I JUST -- BUT GO

17   AHEAD.

18        MR. TU:  I UNDERSTAND, YOUR HONOR.

19             AND I AM NOT REFERRING TO THE UNDERLYING

20   ULTIMATE FACTS.  I'M JUST REFERRING TO WHAT'S DISPUTED

21   AND UNDISPUTED AND WHAT ARE IN THE PLEADINGS THEMSELVES

22   OR WHAT IN THE JUDICIALLY-NOTICEABLE FACTS THAT ARE

23   RELEVANT TO THE MOTION TO DISMISS.

24             FIRST OF ALL, THE POINT YOU JUST

25   MENTIONED, THERE ACTUALLY HAS NOT BEEN A FINAL

```
1    DETERMINATION MADE BY THE CALIFORNIA BOARD OF
2    EQUALIZATION THAT THE COMPANY ACTUALLY OWES THIS TAX.
3              WHAT HAPPENED -- AND THIS IS ALL -- THIS
4    IS PARTLY IN THE COMPLAINT, ET CETERA.  BUT THERE WAS A
5    ROUTINE AUDIT CONDUCTED.  THERE WAS A TENTATIVE FINDING
6    BY THE INVESTIGATOR AT THE BOARD OF EQUALIZATION THAT
7    WAS COMMUNICATED TO THE COMPANY, FOR THE FIRST TIME IN
8    2014, THAT THEY WERE INCLINED, MAYBE, TO GO IN THAT
9    DIRECTION.  THAT IS WHAT SET OFF THE RESTATEMENT.
10             BUT SINCE THAT TIME -- AND I THINK THIS
11   ACTUALLY GOES TO THE UNDERLYING -- IT'S ACTUALLY A
12   NEGATIVE INFERENCE AGAINST ANY SORT OF FINDING THAT
13   THERE MIGHT BE SCIENTER BASED ON THAT.  THE ARGUMENT
14   THAT THE TAX CODE IS SO SIMPLE AND OBVIOUS, THAT
15   OBVIOUSLY THE COMPANY MUST HAVE KNOWN, YOU KNOW, WE'VE
16   ADDRESSED THAT IN OUR PAPERS.  I THINK ONE VERY -- THE
17   REGULATORS HAVE NOT YET EVEN MADE THEIR FINAL
18   DETERMINATION.
19             THE COURT:  WHAT ABOUT MY QUESTION, WHICH WAS,
20   WHAT IS YOUR POSITION WITH RESPECT TO WHETHER OBTAINING
21   AN EXEMPTION CERTIFICATE IS REQUIRED IN CALIFORNIA?
22             MR. TU:  THE COMPANY DID NOT BELIEVE THAT THEY
23   WERE REQUIRED TO OBTAIN THAT CERTIFICATE.
24             IF THE BOARD OF EQUALIZATION ULTIMATELY
25   MAKES A DIFFERENT DETERMINATION, THEN IT DOESN'T -- BUT
```

1    UP TO NOW, IT DOESN'T -- THE COMPANY'S POSITION WAS

2    THAT IT DID NOT BELIEVE THAT IT WAS REQUIRED TO OBTAIN

3    THAT CERTIFICATE.

4            THE COURT:  WELL, THAT'S BECAUSE IT DIDN'T

5    BELIEVE -- IT'S BECAUSE, IN YOUR VIEW, IT DIDN'T

6    BELIEVE IT HAD TO COLLECT SALES TAX.  SO IT DIDN'T NEED

7    AN EXEMPTION; RIGHT?

8            MR. TU:  CORRECT.

9            THE COURT:  BUT MY QUESTION IS A BIT

10   DIFFERENT.  AND THAT IS, DO YOU HAVE A VIEW AS TO

11   WHETHER THE -- THE REGULATIONS AND ADMINISTRATIVE

12   PROCESSES OF THE REVIEW -- OF THE CALIFORNIA BOARD

13   REQUIRES THAT, IN ADVANCE OF NOT COLLECTING SALES TAX,

14   ONE HAS TO GET THE CERTIFICATE, OR IS THAT JUST AN

15   OPTIONAL APPROACH?

16           MR. TU:  SO IF I WASN'T CLEAR, I THINK -- YOU

17   KNOW, JUST TO BE CLEAR, MY VIEW IS THAT IT'S NOT BLACK

18   AND WHITE WHETHER YOU ARE REQUIRED TO DO THAT.  IT'S A

19   MATTER OF JUDGMENT.

20               IN THIS CASE, THE COMPANY CERTAINLY HAD

21   REASONABLE GROUNDS.  IT HAD NEVER BEEN REQUIRED TO GET

22   ONE BEFORE.  AND I THINK YOU NEED TO LOOK AT THE WHOLE

23   CONTEXT OF WHAT WOULD BE THE POSSIBLE MOTIVE OR THE

24   POSSIBLE GAIN THAT THE COMPANY WOULD HAVE RECEIVED, IF

25   IT HAD KNOWN ABOUT THIS REQUIREMENT, TO NOT HAVE DONE

```
 1    THAT?

 2                THERE IS NONE.  YOU CAN LOOK THROUGH THE

 3    COMPLAINT.  YOU CAN EVEN LOOK THROUGH THE OPPOSITION

 4    BRIEF.  AND I THINK THAT'S A BIG GAPING WHOLE HERE, IS,

 5    EVEN IF ONE ASSUMES -- YOU TAKE IT AT FACE VALUE, THE

 6    ALLEGATION THAT THEY MUST HAVE KNOWN -- AND THAT REALLY

 7    IS WHAT THE PLAINTIFFS CASE IS ABOUT, "THEY MUST HAVE

 8    KNOWN."  EVEN IF YOU TAKE THAT AT FACE VALUE, WHAT

 9    WOULD BE THE POSSIBLE INCENTIVE FOR THE COMPANY TO --

10    TO NOT WANT TO GET THAT SALES TAX EXEMPTION OR TO NOT

11    COLLECT THE TAXES?

12                THESE -- THIS WAS A PUBLICLY-FUNDED

13    UTILITY PROGRAM IN WHICH THERE WAS NO -- THERE WAS NO

14    POSSIBLE BENEFIT THAT THE COMPANY WOULD HAVE RECEIVED

15    FROM NOT CHARGING SALES TAX.  IT COULD SIMPLY HAVE

16    PASSED THEM THROUGH TO THE UTILITY.  THE UTILITY WAS

17    THE ONE THAT WAS RUNNING THE PROGRAM DIRECTLY WITH THE

18    END CUSTOMERS.

19                THE COURT:  WITHOUT MORE FACTS, I DON'T KNOW.

20                MR. TU:  THAT'S ALL ALLEGED IN THE COMPLAINT.

21                THE COURT:  THAT'S NOT MY POINT.

22                MR. TU:  I'M SORRY.

23                THE COURT:  I DON'T KNOW TO WHAT EXTENT

24    REVENUES COULD HAVE BEEN AFFECTED IF SALES TAX APPLIED.

25                IF THE COST OF THE GOODS TO THE USER WENT
```

1    UP BY SEVEN OR EIGHT, WHATEVER SALES TAX PERCENTAGE IT

2    IS, WOULD AS MANY UNITS HAVE BEEN SOLD?

3            MR. TU:  THAT'S THE AMOUNT OF THE RESTATEMENT.

4    THE RESTATEMENT IS APPROXIMATELY 4 MILLION.

5            THE COURT:  I UNDERSTAND.

6            I'M RESPONDING TO YOUR COMMENT THAT WHAT

7    WOULD THE INCENTIVE BE.  AND WHAT I'M SAYING IS,

8    WITHOUT FACTS, I CAN'T SAY.

9            WHAT IF THE REVENUES WERE GOING TO DROP

10   BY 30 PERCENT IF AT 8 PERCENT SALE TAX WERE IMPOSED

11   BECAUSE 30 PERCENT OF THE BUYERS WEREN'T GOING TO BUY

12   AT THAT HIGHER PRICE?

13           OR, ALTERNATIVELY, THE PRICE WOULD HAVE

14   GO DOWN TO REFLECT THE SALES TAX.  AGAIN, WE'RE

15   SPECULATING.

16           MR. TU:  CAN I ADDRESS THAT?

17           THE COURT:  SURE.

18           MR. TU:  SO HERE'S WHAT I THINK IS THE

19   FUNDAMENTAL DIFFERENCE WITH YOUR LINE OF QUESTIONING

20   AND WHAT IS ACTUALLY DISCLOSED:

21           IF YOU LOOK AT THE COMPLAINT -- IT'S

22   ACTUALLY PLED IN THERE.  I THINK IT'S PARAGRAPH 26 TO

23   28 OR AROUND THERE.  IT SPECIFICALLY DESCRIBES, THIS IS

24   NOT A PROGRAM WHERE THE LOW INCOME END CUSTOMER IS

25   ACTUALLY SHOPPING AROUND FOR THE LOWEST PRICE.  THIS IS

```
 1    A PROGRAM THAT IS SPONSORED BY THE UTILITIES.  THEY'RE
 2    OFFERING THESE REPLACEMENTS AND EXCHANGES OF OLDER,
 3    INEFFICIENT APPLIANCES.  AND SO THESE END-USER
 4    CUSTOMERS ARE SIGNING UP.  THE BILLS GO AND THE
 5    CONTRACTS ARE DIRECTLY BETWEEN THE UTILITY AND THE
 6    COMPANY.  AND SO -- YOU KNOW, THE WAY IT'S SET UP, IF
 7    THEY HAD SIMPLY JUST ADDED ON AND COLLECTED SALES TAX,
 8    IT WOULD HAVE PASSED RIGHT -- IT WOULD HAVE WENT TO THE
 9    UTILITY AS OPPOSED TO -- THE UTILITY WOULD HAVE BEEN
10    RESPONSIBLE FOR --
11              THE COURT:  WERE THEY THE SOLE PROVIDER TO THE
12    UTILITY DURING THE RELEVANT TIME PERIOD?
13              MR. TU:  I BELIEVE THEY WERE UNDER THIS
14    PROGRAM, BUT I CAN'T SAY THAT ABSOLUTELY FOR SURE.
15              BUT THERE'S A COMPETITIVE BIDDING
16    PROCESS.  THEY SELECT ONE.  I DON'T KNOW IF IT'S
17    ABSOLUTELY THE ONLY UTILITY.
18              THE COURT:  I DON'T -- THIS IS TOO MUCH OF A
19    TANGENT.
20              BUT IF THERE'S A COMPETITIVE BIDDING
21    PROCESS, AND ONE BIDDER IS INCLUDING SALES TAX AND THE
22    OTHER IS NOT, THAT COULD HAVE AFFECTED THAT.  BUT WE'RE
23    NOT THERE.
24              GO AHEAD.
25              MR. TU:  THANK YOU.
```

```
1            JUST TO CLARIFY A FEW MORE OTHER POINTS.
2    I JUST WANTED TO MAKE SURE THAT WAS CLEAR.
3            YOU MENTIONED THAT THERE WAS A
4    CONFIDENTIAL WITNESS THAT WAS A DIRECTOR.  I WASN'T
5    ENTIRELY CLEAR WHETHER YOU UNDERSTOOD THAT THIS IS NOT
6    A DIRECTOR OF THE COMPANY OF THE BOARD OF DIRECTORS
7    THAT THEY'RE ALLEGING.  THIS IS A DIRECTOR OF A UTILITY
8    COMPANY THAT WAS A CUSTOMER OF THE COMPANY.  AND THAT
9    UTILITY -- THAT DIRECTOR ACTUALLY -- PART OF THE
10   PURPORTED TESTIMONY OR -- THAT HE'S GIVEN AS PART OF
11   THIS CASE IS THAT, HE BELIEVED THAT THE COMPANY
12   ACTUALLY BELIEVED THEY WERE TAX EXEMPT, WHICH -- I
13   MEAN, THAT -- THAT DIRECTLY REFUTES ANY NOTION OF
14   SCIENTER BY THE COMPANY.  THEIR OWN WITNESS SAID THAT
15   IN THE COMPLAINT.
16           ALSO, YOUR HONOR HAD MENTIONED THAT IT
17   WAS UNDISPUTED THAT THE CEO HAD RESIGNED AND ONLY
18   BECAME THE CHAIR AND IT'S NOT CLEAR.
19           ACTUALLY, WHAT HAPPENED WAS, THE CEO DID
20   RESIGN.  IT WAS PART OF A LENGTHY PROCESS.
21           AND WHAT MR. ROSEN SAID ABOUT NOT HAVING
22   A SUCCESSOR IN PLACE, THAT'S DIRECTLY REFUTED BY THE
23   JUDICIALLY-NOTICEABLE ANNOUNCEMENT THAT ANNOUNCED THE
24   RESIGNATION.  IF YOU LOOK AT EXHIBIT A TO OUR REQUEST
25   FOR JUDICIAL NOTICE, IT'S THE FORM 8-K THAT ANNOUNCES
```

1  THE RESIGNATION.  IN THE EXACT SAME RESIGNATION, IT

2  TALKS ABOUT THE NEXT CEO, MARK EISENSCHENK, HAS BEEN

3  BROUGHT IN IN AN ORDERLY SUCCESSION, HAS BEEN GETTING

4  TO KNOW THE BUSINESS, AND THAT HE'S GOING TO BE TAKING

5  OVER, AND THAT THE REASON FOR THIS CHANGE IS TO ENSURE

6  AN ORDERLY TRANSITION.

7       THE COURT:  DOES THE 8-K STATE THAT THAT

8  ORDERLY TRANSITION PROCESS HAD BEEN UNDERWAY PRIOR TO

9  THE -- DOES IT SAY FOR HOW LONG THAT ORDERLY PROCESS

10  HAD BEEN UNDERWAY?

11       MR. TU:  IT DOES.  IF YOU LOOK AT PAGE 6 OF

12  EXHIBIT A, WHICH IS EXHIBIT 99.1 TO THE FORM 8-K THAT

13  WAS FILED, IT SAYS THAT, "CAMERON SAID" -- IN THE LAST

14  PARAGRAPH OF THAT PAGE, "CAMERON SAID, AFTER MORE THAN

15  35 YEARS AS THE HEAD OF ARCA, I BELIEVE THIS IS THE

16  RIGHT TIME TO TURN ARCA'S LEADERSHIP OVER TO THE NEXT

17  GENERATION.  SINCE JOINING ARCA, MARK HAS IMMERSED

18  HIMSELF IN ALL ASPECTS OF ARCA'S OPERATIONS TO PREPARE

19  FOR HIS NEW ROLE AS PRESIDENT AND CEO."

20            AND THERE'S SOME MORE ABOUT HOW HE'S --

21  HIS KNOWLEDGE OF THE BUSINESS SEGMENTS COMBINED WITH

22  HIS PREVIOUSLY-GAINED EXPERIENCE "GIVE ME CONFIDENCE

23  THAT ARCA WILL PROSPER."

24       THE COURT:  WHEN DID HE JOIN -- WHEN DID THE

25  SUCCESSOR JOIN ARCA?

1    MR. TU:  HE JOINED AS CHIEF OPERATING OFFICER

2    IN JULY -- IN 2013 -- JULY 2013.  AND THAT'S ALSO IN

3    THE FORM 8-K IN ITEM 502.

4         THE COURT:  JUST A MINUTE.

5              AND WHEN WAS THE RESIGNATION OF THE CEO

6    ANNOUNCED?

7         MR. TU:  AUGUST 2014.

8         THE COURT:  AUGUST 20, 2014?

9         MR. TU:  2014.

10        THE COURT:  OKAY.  THANK YOU.

11        MR. ASKEW:  AUGUST 14TH, 2014.

12        MR. TU:  AUGUST 14TH, 2014.

13        THE COURT:  SO MORE THAN A YEAR AFTER THE

14   SUCCESSOR HAD JOINED AS COO?

15        MR. TU:  CORRECT.

16        THE COURT:  OKAY.  ANYTHING ELSE YOU WANTED TO

17   ADD AT THIS POINT?

18        MR. TU:  JUST A FEW THINGS.

19             SO ON THE POINT ABOUT -- OKAY.  SO THIS

20   IS -- I HESITATE TO EVEN BRING THIS UP BECAUSE I DON'T

21   THINK IT'S REALLY -- IT'S VERY TANGENTIAL.  BUT BECAUSE

22   IT WAS BROUGHT UP BY MR. ROSEN, I WOULD JUST NOTE THAT

23   THE VARIOUS WEBSITE PRINTOUTS FROM -- IN THEIR JUDICIAL

24   NOTICE REQUEST THAT THEY PRINTED OUT FROM THE BOARD OF

25   EQUALIZATION, THERE'S NO SHOWING WHATSOEVER OR ANY

```
1     ATTEMPT TO SHOW THAT THAT'S WHAT THE WEBSITE ACTUALLY

2     LOOKED LIKE AT THE TIME ANY OF THESE THINGS WERE

3     HAPPENING.

4              AND, IN FACT, IF YOU LOOK AT THE THEIR

5     RJN, THEY ALL SAY THEY WERE PRINTED ABOUT A MONTH AGO.

6     SO WE DID NOT FILE AN OPPOSITION TO THAT JUDICIAL

7     NOTICE REQUEST MAINLY BECAUSE, IN MY VIEW, IT DOESN'T

8     REALLY AFFECT THE MOTION ONE WAY OR THE OTHER.  BUT I

9     DID WANT TO POINT THAT OUT.  ALL IT IS IS WHAT THE

10    WEBSITE CURRENTLY SAYS.

11             WITH RESPECT TO THE RESTATEMENT BEING

12    PRIMA FACIE EVIDENCE, I WOULD JUST SAY THAT A

13    RESTATEMENT IS A CORRECTION OF AN ERROR IN AN

14    ACCOUNTING STATEMENT.  AND WHEN IT REACHES A CERTAIN

15    LEVEL THAT IT'S MATERIAL, THEN YOU'RE REQUIRED TO

16    RESTATE.

17             BUT THERE IS PLENTY OF CASE LAW -- AND

18    IT'S CITED IN OUR BRIEFS, SO I WON'T GO THROUGH IT.

19    BUT THERE'S PLENTY OF CASE LAW IN THE NINTH CIRCUIT

20    THAT SAYS THAT THE MERE FACT OF A RESTATEMENT, ALL THAT

21    TELLS YOU IS THAT THERE WAS THE NEED FOR A MISSTATEMENT

22    TO BE CORRECTED.  IT STANDING ALONE IS NOT ENOUGH TO

23    PLEAD SCIENTER.  AND IT'S NOT ENOUGH TO PLEAD ANY OF

24    THE OTHER PARTICULARIZED DETAILS THAT THE PLAINTIFFS

25    MUST PLEAD.  THERE'S NO ARTICULATION IN THE COMPLAINT
```

1   REGARDING HOW ANY DEFENDANT SUPPOSEDLY KNEW THAT THE

2   COMPANY'S ACCOUNTING WAS WRONG, WHEN THEY ALLEGEDLY

3   KNEW IT, HOW THEY ACQUIRED THAT KNOWLEDGE OF WHAT WAS

4   WRONG, OR WHAT THEY HAD TO GAIN.  AND ALL OF THOSE ARE

5   FACTORS THAT THE CASES THAT WE HAVE CITED IN OUR CASES

6   SAY, IT'S NOT ENOUGH JUST TO SAY THAT THERE WAS A

7   RESTATEMENT UNDER THE REFORM ACT, UNDER THE

8   HEIGHTENED-PLEADING STANDARDS.  YOU HAVE TO -- YOU HAVE

9   TO ALLEGE, IN PARTICULARIZED DETAIL, FACTS

10  SUPPORTING -- FACTS ANSWERING ALL OF THOSE QUESTIONS.

11              AND I THINK IT WAS KIND OF TELLING, THE

12  VERY LAST THINGS MR. ROSEN SAID IN DESCRIBING WHAT IT

13  IS THAT A RESTATEMENT IS.  HE SAID THAT THAT MEANS THAT

14  HAD THEY KNOWN THE FACTS, THEY WOULD HAVE DONE IT RIGHT

15  THE FIRST TIME.  I BELIEVE HE -- I BELIEVE THAT'S WHAT

16  HE SAID.  THAT'S EXACTLY THE POINT HERE, IS THAT A

17  RESTATEMENT ITSELF DOES NOT TELL YOU ANYTHING ABOUT

18  WHETHER THEY KNEW OR DIDN'T KNOW.  BUT HAD THEY KNOWN

19  THE FACTS, THAT IS -- A STRONG INFERENCE OF SCIENTER

20  MUST BE PLED IN ORDER FOR THIS CASE TO MOVE FORWARD.

21              DOES THE COURT HAVE ANY OTHER QUESTIONS?

22          THE COURT:  NO.  YOU HAVE COVERED IT, MR. TU.

23              MR. ROSEN, ANYTHING YOU WANT TO ADD

24  BRIEFLY?

25          MR. ROSEN:  YES, YOUR HONOR.  I WON'T

1    REITERATE ANYTHING I SAID ALREADY.

2                    I DISAGREE WITH A NUMBER OF ISSUES THAT

3    HE RAISED.

4                    JUST SOMETHING NEW, THE 8-K DEALING WITH

5    THE TERMINATION, THAT WAS A SURPRISE ANNOUNCEMENT.

6    NEVER BEFORE, THAT I'M AWARE OF, DID THEY SUGGEST TO

7    THE FINANCIAL COMMUNITY THAT MR. EISENSCHENK WOULD BE

8    REPLACING MR. CAMERON.

9                    AND SO MR. EISENSCHENK WAS JUST THE ONLY

10   SENIOR OFFICER LEFT.  THE CFO WAS IMPLICATED IN THE

11   FRAUD.  AND HE JUST HAPPENED TO BE THE ONE GUY THERE.

12                    THERE'S NO EVIDENCE THAT I'M AWARE OF

13   THAT THIS WAS A PLANNED SUCCESSION.  HE WAS THE GUY

14   LEFT ON THE BENCH FOR THE JOB.  SO IT WAS A SURPRISE

15   ANNOUNCEMENT AND HIGHLY UNCHARACTERISTIC UNDER ZUCCO.

16              THE COURT:  IS MR. EISENSCHENK STILL A

17   DEFENDANT?

18              MR. ROSEN:  I DON'T THINK SO, YOUR HONOR.  I

19   DON'T THINK SO.

20              THE COURT:  BECAUSE HE'S -- HIS NAME APPEARS

21   IN THE AMENDED COMPLAINT.

22              MR. ROSEN:  MY -- I BELIEVE THE INTENTION WAS

23   TO JUST HAVE THE CFO AND THE CEO AS DEFENDANTS.

24              THE COURT:  HE'S NOT NAMED IN THE BODY OF THE

25   AMENDED COMPLAINT, BUT ONLY ON ITS COVER PAGE.

1          DO YOU AGREE WITH THAT?

2          MR. TU:  YEAH, HE WAS DROPPED BETWEEN THE

3  ORIGINAL AND AMENDED COMPLAINT VOLUNTARILY BY THE

4  PLAINTIFFS.

5          MR. ROSEN:  I THINK WE DIDN'T CHANGE THE

6  CAPTION BECAUSE MY MEMORY IS THAT THE CLERK DOESN'T

7  WANT YOU TO CHANGE THE CAPTION.

8          THE COURT:  THE CAPTION IS AMENDED AS PART OF

9  THE AMENDMENT.

10          MR. ROSEN:  OKAY.  I'M CONFUSING MY COURTS

11  THEN.  I'LL CHANGE THE CAPTION.

12          THE COURT:  THANK YOU.

13              WELL, JUST CHANGE IT IN THE FUTURE.

14          MR. ROSEN:  YES, YOUR HONOR.

15          THE COURT:  AND IF I ADHERE TO MY TENTATIVE

16  AND REQUIRE AN AMENDED COMPLAINT, THEN JUST FOLLOW

17  THE -- DON'T INCLUDE HIS NAME UNLESS HE'S RE-ADDED.

18          MR. ROSEN:  YES, YOUR HONOR.

19              THE SECOND ISSUE I WANTED TO RAISE IS THE

20  IDEA THAT, WE CONCEDED THAT HAD THEY KNOWN THE FACTS,

21  THEY WOULD HAVE DONE IT DIFFERENTLY.  I WAS SPEAKING OF

22  THE AUDITOR.  AND I WAS SPECIFICALLY ADDRESSING THE

23  ARGUMENT THAT, WELL, SINCE THE AUDITOR SIGNED OFF ON

24  IT, THEREFORE, THEY MUST HAVE BEEN -- IT WOULD HAVE

25  BEEN A LEGITIMATE POSITION.

```
1            MY POINT WAS, YOUR HONOR, THAT THE

2    RESTATEMENT, THE CORRECTION OF AN ERROR AROSE FROM A

3    MISUSE OF FACTS, WHICH IS THE AUDITOR -- MANAGEMENT

4    MISUSED THESE FACTS, CLAIMED AN EXEMPTION THAT DID NOT

5    EXIST.  AND HAD THE AUDITOR KNOWN AT THE TIME THAT THEY

6    WERE MISUSING THE FACTS, THE AUDITOR WOULD NOT HAVE

7    PERMITTED IT, WOULD NOT HAVE ALLOWED THAT -- WOULD NOT

8    HAVE SIGNED OFF.

9            WHEN THE AUDITOR FOUND OUT ABOUT THAT

10   MISUSE OF FACTS, THEY SAID YOU HAVE TO RESTATE.  AND

11   THEY RESTATED BECAUSE THE AUDITOR SAID YOU HAVE TO

12   RESTATE.  WE'RE PULLING OUR OPINION.

13            AND SO MR. CAMERON AND MR. CAMMERRER,

14   THEY KNEW THE FACTS FROM DAY ONE FROM -- FROM 2011.

15            SO THAT'S MY ONLY REPLY, YOUR HONOR.

16        THE COURT:  ALL RIGHT.  IS THERE SOMETHING NEW

17   YOU HAVE, MR. TU?

18        MR. TU:  WELL, I JUST WANTED TO ADDRESS THE

19   TWO POINTS HE MADE.  BUT IF THE COURT IS NOT INCLINED

20   TO CHANGE ITS TENTATIVE --

21        THE COURT:  WELL, I THINK I HAVE ENOUGH DATA

22   ON WHICH TO ACT.  THANK YOU.

23            WITH RESPECT TO SETTLEMENT DATES, YOU

24   HAVE AGREED ON USING MR. MELNICK AS THE NEUTRAL?

25        MR. ROSEN:  YES.
```

```
 1              MR. TU:  YES, SUBJECT TO HIS AVAILABILITY.

 2              MR. ROSEN:  YES.

 3              THE COURT:  AND HAVE YOU DISCUSSED WHEN YOU

 4      THINK IT WOULD BE PRODUCTIVE TO MEET WITH HIM?

 5              MR. ROSEN:  I DON'T THINK WE TALKED ABOUT

 6      DATES.

 7              MR. TU:  ACTUALLY, I SPOKE WITH YOUR PARTNER.

 8      DO YOU WANT ME TO --

 9              MR. ROSEN:  OKAY.  I FORGOT.

10              MR. TU:  SO I CAN REPRESENT TO THE COURT, WE

11      ACTUALLY SUBMITTED A FILING TO THE COURT PROPOSING THAT

12      THE APPROPRIATE DATE WOULD BE 60 DAYS AFTER ANY ORDER,

13      SHOULD IT OCCUR, FROM THIS COURT ALLOWING THIS CASE TO

14      GO BEYOND THE PLEADING STAGE.

15                   AS I'M SURE THE COURT IS AWARE, MANY -- A

16      HIGH PERCENTAGE OF THESE TYPES OF CASES GET DISMISSED.

17      AND SO THESE CASES DON'T TYPICALLY SETTLE UNTIL --

18              THE COURT:  -- THERE'S AN OPERATIVE COMPLAINT.

19                   SO YOUR PLAN WOULD BE THAT, IF I ADHERE

20      TO -- SO, HYPOTHETICALLY, IF I ADHERE TO MY TENTATIVE

21      AND REQUIRE AND DISMISS WITH LEAVE TO AMEND AND AN

22      AMENDED COMPLAINT IS FILED, IF YOU DIDN'T CHALLENGE THE

23      AMENDED COMPLAINT, THEN WITHIN 60 DAYS OF ITS FILING,

24      YOU WOULD MEDIATE?

25              MR. TU:  YES.
```

```
 1              THE COURT:  AND, ALTERNATIVELY, IF YOU DID
 2   CHANGE THE COMPLAINT, WITHIN 60 DAYS OF A RULING WHICH
 3   DENIED A MOTION TO DISMISS IN WHOLE OR IN PART, YOU
 4   WOULD MEDIATE?
 5              MR. TU:  CORRECT.
 6              MR. ROSEN:  YES, YOUR HONOR.
 7              THE COURT:  OKAY.  I HAVE THAT.
 8              MR. TU:  KEEPING IN MIND, THIS IS A PUTATIVE
 9   CLASS ACTION.
10              THE COURT:  I UNDERSTAND.  I'LL GET ON IT.
11   THANK YOU FOR YOUR HELP TODAY.
12              MR. TU:  THANK YOU, YOUR HONOR.
13              MR. ROSEN:  THANK YOU, YOUR HONOR.
14              MR. TU:  THANK YOU, YOUR HONOR.
15              (END OF PROCEEDINGS)
16
17
18
19
20
21
22
23
24
25
```

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3     COUNTY OF LOS ANGELES          )
                                     )
4     STATE OF CALIFORNIA            )

5               I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

6     COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

7     COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

8     CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

9     STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

10    TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

11    HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

12    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

14    STATES.

15    DATE:  OCTOBER 28, 2015

16

17

18                    /S/ ALEXANDER T. JOKO
                      _____
19                    ALEXANDER T. JOKO, CSR NO. 12272
                      FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25